Tullos vs. Lane.

---

# No. 11,078.

## E. A. Tullos vs. A. A. Lane.

45 333
107 330

45 333
f123 636

1. A party is not allowed to amend his pleadings of course—he must apply for and obtain leave from the court to do so.
2. Article 185 of the Constitution in fixing the qualification of electors has reference to the acquisition of the right to vote, and does not furnish an inflexible rule under which that right, when once gained, should be held to have been lost.
   The right when once gained is subject, of course, to be lost by absence—absence unexplained is a fact which enters largely in the determination of a question of that character, but absence is not always and necesssarily the controlling factor.
3. An absence which a party all the while intended as merely temporary, to be and actually followed by resumption of the former residence, will not be considered an abandonment of the former residence.
4. Voters may accept the registrar's *de facto*, as they accept the commissioner's *de facto*, and they are no more forced to inquire into the qualifications *de jure* of the registrar than the qualifications *de jure* of the commissioners.
5. Although it is grossly irregular and improper in a registrar of voters to place his registration books in the possession and under the control of persons not legally authorized to register voters, it does not follow that where such parties have under verbal authority from the registrar registered persons unquestionably entitled to vote, that the latter should be considered as not having been registered at all, and that their votes should be held illegal and thrown out. Irregularity of registration and utter absence of registration are different things.
6. Where registration has been carried on under verbal authority from the registrar by persons not having legal authority so to do, and there is no charge of fraud or discrimination against any voter—no allegation of injury actually re-

Tullos vs. Lane.

sulting—no attempt to challenge the voters so registered or to purge the registration books, voters actually entitled to vote can not after the election be deprived of their constitutional right to have participated therein, by the simple fact of itself, that the person who registered them was not legally author.zed to do so.

7. Legal voters can not be forced to disclose the names of the persons for whom they voted.

8. The requirement of the third paragraph of Article 185 of the Constitution as one of the qualifications for a voter that he should be an actual resident of the ward or precinct in which he offers to vote at least thirty days next preceding the election is as imperative as that of being an actual resident of the parish for six months and of the State for one year, but where, as a matter of fact, there is the greatest uncertainty as to where the ward lines really are, the court would not feel justified in disturbing the vote as cast, particularly where parties have registered after due inquiry upon the advice of the registering officers, and where the office voted for not being a ward office there is no reason for imputing any wrong motive in the selection of wards.

9. The decision of the court of the first instance upon a question of fact prevails unless manifestly erroneous.

APPEAL from the Fourth District Court, Parish of Jackson. Wear, J.

*Graham & Halstead* for Plaintiff and Appellant:

Suffrage is not a natural, but a political right, and the registration—according to law—is in this State a mandatory prerequisite to its exercise; and in a contest, where defendant impeaches by his pleadings and evidence the election returns, and the evidence fails to show with legal certainty his election, he must be ousted from the office—whether the plaintiff succeeds in proving his own right to the office or not, and in such case the burden of proof is on defendant. McCrary, p. 210; Am. and Eng. Enc., p. 433, No. 24, pp. 326, 334; Act 58 of 1877, Sec. 24.

No person except the assessor and the clerk of registration have authority to place names on the books of registration. Act 123, Secs. 29 and 30, of 1880; see Sec. 23, ; Act 101 of 1877.

The voter must be an actual resident. Art 185, Const. 1879; McCrary, pp. 52, 53, 65 ; Am. and Eng. Enc., p. 278-9, Nos. 39-40; Act 123, 1880, Sec. 6; see authorities cited in body of brief. On interpretation of laws: See Arts. 13, 18 and 66; 12 An. 154 and 835.

When to prevent fraud, or for any other motives of public good, the law declares certain acts void, its provisions are not to be dispensed with on the ground that the particular act in question has been proved not to be fraudulent, or not to be contrary to the public good. C. C., Art. 19.

*R. E. Milling* and *Stubbs & Russell* for Defendant and Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff and defendant were two of seven candidates for the office of sheriff of the parish of Jackson. The

defendant was returned elected over plaintiff by a plurality of three votes, and has been commissioned and qualified as sheriff.

The plaintiff in this action contests the election, and prays that he, and not defendant, be decreed to have been elected sheriff. The grounds set up are, that persons who were not residents and electors of the parish, and were not actual residents of the ward in which they offered to vote, for thirty days next preceding the election, were allowed to vote, and did illegally vote, for defendant at the Vernon box. That registration was not closed according to law, but was continued up to the day of the election, and even on that day. That parties other than the registrar and his clerk, who had no legal right or authority to do so, illegally registered a large number of persons, who were allowed to vote under their illegal registration, and voted for defendant. That the illegal votes so cast changed the legal result, and but for them plaintiff was elected.

It appears that by inadvertence in the preparation of the pleadings, a number of names which plaintiff had intended to have inserted in his petition, (among others which he alleged to be those of illegal voters), were omitted, and that on discovering the fact he at once, and before service, made out a list of the same, and requested the clerk to be permitted to annex it to his petition as part thereof, but that this officer refused this request, on the ground that the papers had already been filed, and could not be added to. That thereupon the plaintiff drew up a supplemental petition, in which he set out these names, and, alleging the fact of the omission, prayed that the amended petition be filed and served on the defendant, which was accordingly done.

When the defendant ascertained that plaintiff had filed a contest against him, he himself, although returned and qualified as sheriff, brought suit against Tullos.

In his petition he alleged that he had been elected and returned as sheriff; that the returns on their face only showed him to have been elected by three majority, whereas, in fact and in truth, he was elected by a plurality of 200 votes. In order to reach this result he attacked the election held at several polling places for reasons stated, and the legality of the votes cast thereat, declaring them to have been illegally cast for plaintiff. He prayed that the elections at these precincts be declared fraudulent, null and void, as also the returns from the same, and the tally sheets and statements (which

he declared were not sworn to nor certified); that the votes at these boxes be thrown out; that he be decreed to have been elected by a plurality of 200 votes, and quieted in the possession of his office.

When the District Court convened the defendant herein filed a motion to strike out the supplemental petition on the ground that it had been filed in vacation and without the permission of the court. This motion was sustained, but with permission to plaintiff to file it at that time. It does not seem to have been thereafter served on the defendant.

Defendant filed an answer to the present suit, in which he first pleaded the general issue and next proceeded to attack the elections at the Coontown, Embray's Tan Yard and Smart's Store polling places on the same grounds which he had urged in ·his petition against Tullos, one of which (we omitted to say) was that the commissioners at these polls had not taken any oath. He also prayed, as in the petition filed by him, that the whole vote at these boxes (and under all contingencies the specially named iliegal votes cast thereat) and the returns therefrom be not counted, but be set aside, that plaintiffs' petition be rejected, that he be decreed elected by a plurality of two hundred votes and placed in the possession of his office.

Turning now to the proceeding instituted by the defendant herein against Tullos, we find that the latter's first move was to file an exception of no cause of action, with a prayer that the petition be dismissed; but that shortly afterward he waived the exception, filed an answer and prayed that Lane's suit be consolidated with his own; that thereupon Lane made a motion to discontinue his suit, but that on objection made by Tullos the motion was refused and the cases ordered to be consolidated. The district judge assigned as his reason for this ruling that the answer in that suit contained a reconventional demand which could not be prejudiced by any action of the plaintiff therein. He also stated that he had no recollection of any mention at the time of the offer of discontinuance that the costs had been paid, or that any receipts for costs were shown.

Tullos' answer in Lane's suit was substantially and practically identical with the petition which he had filed against him but amplified. He availed himself of the opportunity afforded him by that proceeding to insert in this answer the names which he had, as already stated, omitted in his own petition, and to raise a new ground of

Tullos vs. Lane.

attack which he had not urged before, which was to the effect that a number of persons had been illegally allowed to register and vote outside of the wards in which they actually resided, and that these persons had voted for Lane.

When the court, after sustaining defendant's motion to strike out plaintiff's supplemental petition, allowed the same to stand as an amendment from the new date, the defendant Lane asked leave to file an amended answer himself, in which he declared that he was surprised at plaintiff's answer in his suit; that it had recently come to his knowledge that a large number of persons whom he named had been illegally allowed to vote- for the plaintiff out of the wards in which they actually resided.

The court refused to allow the amendment, on the ground that it was made too late. The case went to trial under these pleadings, and resulted in a judgment in favor of the defendant. The plaintiff has appealed.

The first point we are called on to consider is the action of the court below in striking out plaintiff's amended or supplemental petition on the ground that it was filed in vacation and without the consent of the court. Whilst this ruling was correct (2 Martin 296), plaintiff obtained the full benefit of the amendment under his answer in the Lane suit, and the view we have taken of the law in the case, as to the matters therein contained, makes this supplemental petition unimportant.

The next question is as to whether the court below was right in refusing to allow the discontinuance of Lane's suit against Tullos, and in ordering it consolidated with the present one. The plaintiff contends that a proceeding involving a *contest of election* does not fall under the terms of Article 532 of the Code of Practice, by which the plaintiff, until the moment the jury is about to withdraw, is at liberty, on paying the costs, to discontinue his suit, that such an action once commenced must proceed to judgment by reason of the *public interests* which are affected by the issues raised, and in view of the special fact that the defendant in this particular case had filed a plea in reconvention.

Plaintiff cites McCrary on Elections, Sec. 419, in support of his contention. That writer in the section cited says: "A contested election, whatever the form of the proceeding may be, is in its essence a proceeding in which the people—the constituency—are pri-

22

marily and principally interested.  It is not a suit for the adjudication of private right simply.  It follows that the parties to the record can not by stipulation or otherwise discontinue or compromise a case of this character without the consent and approval of the court or tribunal trying it.  Nor should such consent ever be given unless the court giving it is sufficiently advised to be able to say that it is for the interest of the people to do so.''

Whilst we do not think it absolutely necessary to pass on this question, we do not think it improper to refer to the points raised on this special issue.

The *general* question stands affected by Act No. 40 of the General Assembly of this State of 1873, which is to the effect, ''That whenever any suit is pending in any of the courts of this State wherein the title to any office is involved or wherein there is any contest for the possession of any office and the same is untried, it shall be lawful for the plaintiff, no matter what may be the matter of the pleadings, to discontinue such suit on the payment of the costs,'' and by the *particular fact* that at the moment the plaintiff in that suit offered to discontinue, there existed substantially and practically an issue in another suit *instituted by the defendant* which more than covered the particular question attempted to be raised by Lane in this rather peculiar proceeding of his.

The evident purpose of the defendant in filing an answer therein was to attempt through the same to raise an additional issue in his own suit without the necessity of service of petition and attendant delays which he obviously felt he would not be permitted to raise under a direct application for an amendment of his pleadings at that late stage of the proceedings.

The object was made manifest by the immediate application for a consolidation of the two suits.  In refusing the discontinuance the district judge practically granted the plaintiff the right of amending his pleadings and going to trial on the amendment without citation or issue joined thereon, when he would not have allowed this under other circumstances in all probability.

The discontinuance of plaintiff's action would have left Tullos' contest of election still standing on the docket unaffected by the withdrawal of Lane's petition—the REASON, therefore, of the rule laid down by McCrary did not apply in this particular case. The rejection of Lane's application was substantially to leave Tullos

Tullos vs. Lane.

with two suits on the docket of the same court on the same cause of action, as against which Lane could have pleaded an exception of *lis pendens*.

It admits of great doubt whether even without the statute of 1873 the court should not have allowed the discontinuance under the exceptional features of the case and the character of the so-called reconventional demand; but with that statute on the books and under the circumstances of the case we think the application should have been granted. The plaintiff, Tullos, has obtained the full benefit of the judge's ruling, but the conclusions we have reached render it harmless to the defendant.

We have examined the record very carefully and we are of the opinion that the judgment of the District Court is correct.

The plaintiff claims "that at the Vernon precinct J. H. Trantom, W. E. Upchurch, G. W. Edmonson, Sam Pearce and A. H. Bunnell voted for the defendant, Lane; that these five votes were illegal, and should not have been received or counted, for the reason that they were actual residents of other parishes, and were not actually residing either in the parish or in the ward of the parish in which they voted, for thirty days preceding the election.

The evidence adduced in reference to these parties bring their cases under the operation of the rule announced in Carter vs. Putmain, Ill., 30 N. E. Rep. 681, which declares that an absence, which the party all the while intended as merely temporary, to be followed by the resumption of the former residence, will not be considered an abandonment of the former residence.

Article 185 of the Constitution, in defining the requirements necessary for being a voter in this State, has reference to the acquisition of the right to vote, and does not furnish an inflexible rule under which that right, when once acquired, should be held to have been lost.

The right once gained is subject, of course, to be lost by absence. Absence unexplained is undoubtedly a fact which enters very largely into the determination of a question of that character, but absence is not necessarily and always the controlling factor.

Plaintiff next claims that a number of persons who voted at the general election in Jackson parish were illegally registered by persons other than the assessor or his clerk; that the votes of such of these persons as have been affirmatively shown to have been cast

for defendant should be deducted from the count for Lane, whilst those which could not be fixed as having been cast for a particular candidate should be pro-rated, upon the authority cited in the American and English Encyclopedia of Law, verbo "Elections," page 433, Sec. 24, page 309, Sec. 461 and 462.

Plaintiff establishes the fact alleged by him that quite a number of persons were registered by persons other than the Registrar of Voters and his clerk, but his contention that they are to be considered as *not having been registered at all*, and therefore as coming under the operation of the law which allows only to registered persons the right to vote, is not well founded. "Irregularity" of registration and "utter absence of registration" are very different things.

The testimony in this case shows that the registrar of the parish of Jackson not only did not have any very high sense of the obligation which rested on him in the matter of registration, but that he was culpably negligent in the performance of his duties. Living some five or six miles away from the court house of Jackson parish, he left his registration books in the possession and under the control of persons to whom he gave verbal authority to register in his place, which was done accordingly. It is not even alleged, and still less proved, that any person so registered was not in fact entitled to registry, or that there was any discrimination against any candidate. It is not claimed nor shown that there was any fraud perpetrated, or really any injury suffered, by this proceeding, grossly irregular as it was. The parties registered were unquestionably entitled to vote, and plaintiff rests upon the ground that the fact of itself and by itself made the votes illegal.

We do not think so. McCrary in his work on elections, under Sec. 105, refers approvingly to the decisions in White vs. Baker and State vs. Kromer, where it was held that voters may accept the registrars *de facto* as they accept the inspectors *de facto*, and that they are no more bound to inquire into the qualifications *de jure* of the registrars than into the qualifications *de jure* of the inspectors. The registrar of voters having placed his books in the hands and under the control of the parties so registering, the public had the right to assume that they were clothed with rightful authority in the premises, and innocent voters should not be made to suffer and be deprived of their constitutional right to be

heard in the selection of their sheriff by this negligence and this want of proper performance of duty by the registrar.

There is no evidence that these votes were challenged at the polls or before. It was only when the adverse result of the vote was ascertained that objections were raised. These votes not being illegal no inquiry could be made as to the person for whom they voted. The question as to whether they should have been pro-rated, had they been illegally cast is not a question in this litigation.

The plaintiff claims that a number of persons voted for Lane who voted outside of the wards in which they resided, and that these votes should be struck out. He relies upon the third paragraph of Article 185 of the Constitution, which, referring to the qualifications of a voter, declares: "He shall be an actual resident of the ward or precinct in which he offers to vote at least thirty days next preceding the election."

It can not be denied that the obligation of being an actual resident of the ward in which a person offers to vote during the time fixed is as imperatively required as that of being an actual resident of the parish for six months and of the State for a year, but the case before us rests more on a question of fact than of law.

The evidence shows such a condition of uncertainty as to where the ward lines really are in the parish of Jackson that we would not feel at all justified in disturbing, on this score, the vote as cast. Some of the persons who were so registered did so after inquiry as to where the lines were and under the advice of the registering officers, and the evidence even shows that the polling place for Ward 3 of the parish was located by the police jury itself at Bear Creek Church, which, as far as we can judge from the record, was probably a few yards inside of the line of Ward 2.

The office voted for not being a ward office, we see no reason for imputing any wrong motive for the selection of wards in which to vote.

We question very much, besides, whether the plaintiff would gain any advantage over the defendant from striking out such votes under our analysis of the testimony on this branch of the controversy.

The facts of this case were closely considered, beyond doubt, by the district judge, and we see no reason to believe he reached an erroneous conclusion.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.