MONROE, C. J.
(dissenting). It appears that respondents (as “Quinn & Co.”) brought suit alleging that A. H. Tarver was their debtor; that, their petition so alleging having been filed, a copy of it was issued by the clerk of the district court, and with a citation addressed to A. H, Tarver was placed in the hands of the sheriff for service; that the sheriff’s deputy took them to an office occupied by A. P. Tarver, by whom he was informed that A. H. Tarver lived in Texas, whereupon he took the papers to Quinn & Co.’s attorney, and so informed him; that the attorney then took the papers to the office of the clerk and explained to that officer that he (the attorney) had committed an error in drawing the petition as to one of the initials of the party intended to be sued, which error was repeated in the citation that had been issued, and that thereupon, with the approval of the clerk, he changed the name “A. H. Tarver,” as in the petition, copy, and citation, to A. P. Tarver, and the papers as thus changed were served upon A. P. Tarver and constituted the basis upon which a judgment by confirmation of default was rendered against A. P. Tarver, the validity of which, and of the judgment annulling the same, is the subject of the present inquiry. Upon the hearing of the action of nullity, the attorney testified that it was customary with him and with other members of the bar to make such corrections in that way, and that testimony was corroborated by the clerk, who said (inter alia):
“We do it [make such changes in pleadings and citations prior to service] every now and then; that is done because, there are so many instances that papers are gotten up in a hurry,' and the attorneys leave out some vital point in the pleadings, and before the service is made it is taken up and corrected; that is done very often.”
After stating the facts, our brethren of the Court of Appeal give their reasons for holding *379 the proceedings there described to have been valid as follows:
“Plaintiff bases bis light to tlie annulment of the judgment chiefly on the ground that the changing of the initial in the name of defendant from ‘H.’ to ‘F.’ was an amendment of the petition, and that even before issue joined no amendment can be made or supplemental petition filed without leave of the court or consent of the opposite party, and that no such leave or consent had been obtained by defendants in this case, and in support of this doctrine he cites a few cases from earlier decisions of the Supreme Court which apparently announce this doctrine. A contrary view seems to have been announced in 129 La. 382 [56 South. 324]. In this case the court declared that until the defendant has appeared there is nothing to prevent the filing of as many supplemental petitions as petitioner may wish to file. The only statutory law which bears upon the issue here presented is contained in article 419 of the Code of Practice, the language of which is as follows:
“ ‘After issue joined, the plaintiff may, with leave ot the court, amend his original petition; provided, the. amendment does not alter the substance of his demand, by making it different from the one originally brought.’
As nothing is said in this article with reference to ’amendments filed before issue joined, or elsewhere in the law, the logical inference is that up to the time of joining issue plaintiff would have the right to amend his pleadings, without the necessity of first obtaining leave from the court, reserving always to the courts the right to exclude, on objection, such amendments as are irrelevant, contradictory, or otherwise out of place to the issue presented by the original petition.
“If the substitution of the letter TL’ in the petition caused or was likely to cause any injury to plaintiff, the proper time and place for him to object was in the suit defendant filed against him and before judgment was rendered therein, and, in failing to make his opposition there, he. has seemingly acquiesced in the amendment complained of In [Boyer v. Aubert] 12 Mart. (O. S.) 656, the court said:
“ ‘The only ground for the defense was a mistake in regard to a letter in the name of the plaintiff; and it is clear that such an error cannot be taken advantage of on the general issue; it must be pleaded in abatement.’ ”
Opinion.
- Even--'though it should be conceded that, Without leave of court or notice to the opposing litigant, a plaintiff may file as many supplemental petitions as he thinks proper, it does not follow that, by reason of the specific application of article 419, O. P., to amendments that may be made, with leave of the court, after issue joined, he may amend his petition, without such leave or consent and without even a supplemental petition, but merely by erasures and interlineations in the original petition, which thereby alter and mutilate a record of court that has passed beyond his control; and certainly the clerk of the court, as custodian of its-records, has no such authority to confer on him; nor, are we referred to, nor do I find, any decision by this court, or by any other court, which has sanctioned a proceeding of that character.
The doctrine of the common law upon the subject of the amendment of pleadings is thus stated by good authority, to wit:
“That the pleadings can only be amended by leave of court is an elementary rule of practice, so far as concerns amendments at common law; and ,in some jurisdictions this rule has been made statutory, so that the power to ainend is in the court, not the party.” 31 Cyc. pp. 362, 363.
“In other jurisdictions the common-law rule of practice has been changed by statutes, giving parties the absolute right within certain limits to amend a pleading once as of course.” .Id. p. 363, notes.
Prior to the adoption of the Code of Practice (1825) in this state it had been several times decided that no amendment could be allowed without leave of court or consent of opponent. Read v. Bailey (1812) 2 Mart. (O. S.) 296, and (1825) 3 Mart. (N. S.) 665. In Rost v. St. Francis Church (1826) 5 Mart. (N. S.) 192, Kirkland v. His Creditors (1829) 7 Mart. (N. S.) 513, Baines v. Higgins (1831) 2 La. 221, Callaway v. Webster (1842) 1 Rob. 553, and Tullos v. Lane (1893) 45 La. Ann. 335, 12 South. 508. The doctrine of the earlier cases has been affirmed and reaffirmed, and in Baines v. Higgins, supra, the question *381 of the meaning and effect of article 419, O. P., was fully considered by Martin, J. as follows, to wit:
“The supplemental petition was filed before the answer was filed; but we do not think this circumstance authorized its being filed without leave. To supply the deficiencies of the petition is to amend it, and we think no amendment can take place in the pleadings without leave of the court or the consent of the adverse party. Code of Practice, 419, authorizing the amendment of the petition ‘after issue joined’ has given rise to the idea that the last three words have no meaning unless there be some difference as to amendments before and amendments after issue joined; and, if there be, the difference is either that there is no amending before, or the amendment then requires neither leave nor consent. Hence it is urged, as before issue joined amendments ought to be granted more easily than after, as they are then attended with less trouble and delay, we ought, to adopt the latter alternative and allow amendments before, without leave or consent.
“We think the reasoning inconclusive. The French text of this article of the Code presents the issue joined as presenting no obstacle to an amendment: ‘Quoiqu’il y ait contestation en cause, le demandeur peut se faire auteriser par le juge a amender sa petition.’ We think we give full effect to every word of the English text if we take the meaning of the Legislature to be to allow amendments with leave or consent even after issue joined.
“We' are of opinion the supplemental petition was irregularly filed, without leave or consent. But the motion to strike it off was held to be too late, as the jury were sworn. We are of opinion that it was then still time, because it was necessary to remove from their consideration whatever had been irregularly put on the files of the court.”.
I conclude, then, that the amendment to the petition in the suit instituted by respondents, whereby relator herein was substituted for the party originally named as defendant, was unauthorized and should have been disregarded, and that without that amendment there was left a suit against A. H. Tarver, in which no judgment could legally have been rendered, on confirmation of default, against A. F. Tarver.
As to the citation it is shown beyond dispute. that the only citation' that was at any time issued in the case was addressed to A H. Tarver. It is shown also that the clerk informed defendant’s counsel that he- had never authorized any change in that'citation, and there appears in the record an admission to that effect. Subsequently, however, the clerk was called to the stand, and he then testified that, upon being reminded by plaintiff’s counsel, he was able to recall that he had authorized the change which appears to have been made upon the face of the citation ; i. e., the change in the name.of the addressee, by obliterating the letter “H.,” with a pen, and substituting the letter “F.,” so as to make it read “A. F.” instead of “A. H.” ■Tarver.
The sum and substance of the whole matter, then, is that, instead of there being a court record to show that a suit was brought against A. F. Tarver, and that he was cited, we find the record of a suit agáinst, and citation directed to, A. H. Tarver, with, erasure and interlineation whereby: the name of A. F. Tarver is substituted, but nothing to show by whom or what authority the erasure and interlineation were made; that information being supplied by the oral testimony of the plaintiff’s counsel and of the clerk of the court to the effect that the clerk authorized, and the counsel made, the changes after the filing of the petition and the issuance of the citation, none of which testimony was given upon the confirmation of the default against the defendant. I do not understand that proceedings in a court of record can be conducted in that'Way, and I am of opinion that no such irregularity should be approved by this court; the fact that the alteration of the record consisted in the change of but one letter having no more to do with the legality of the act than has the size of an infant born out of wedlock to do with its legitimacy. '
I therefore dissent respectfully,’ but with emphasis.