The opinion of the court was delivered by
Watkins, J.
In June, 1892, plaintiff’s son, in company with nine other young men, hired from the defendants, T. J. McMahon & Sons, a tally-ho to carry them to West End. On returning at about the hour of 11 o’clock p. m. , the tally-ho came in collision with a train of the defendant railroad company, while attempting to cross its track at the junction of Canal street and Carrollton avenae; and, as a result of the collision, the tally-ho was demolished and the son of plaintiffs killed, after being dragged several hundred feet.
*1392 Alleging that the accident and fatal injury were occasioned by the mutual negligence of the engineer of the locomotive and that of the driver of the tally-ho, plaintiffs sued both, claiming against them in solido damages in the sum of ten thousand dollars.
The defendants, T. J. McMahon & Sons, tendered an exception to the effect that the firm had been dissolved, and that they were not suable in their partnership name.
The railroad company tendered a plea of no cause of action.
These exceptions having been overruled, and the railroad company having obtained a severance of tria1, each of the defendants filed an answer, that of McMahon & Sons being a general denial, and that of the railroad company being a general denial, coupled with the special defence that the accident was caused through the fault and carelessness of the driver of the tally-ho.
The cause first went to trial before a jury, who rendered a verdict in favor of McMahon & Sons, and on the following day there was a similar verdict in favor of the railroad company.
The plaintiffs have appealed from both judgments, and both causes are brought up in one transcript. With regard to the exception of McMahon & Sons, the facts appear to be as follows, viz.:
That they had been for several years engaged in the livery and undertaking business, and, for their own convenience, they sought to establish a limited company, but did not perfect it, or put their project into operation, at least in so far as the general public was concerned.
For instance, their old sign remained upon their vehicles, and particularly upon the one which was hired to the party of young men on the evening of the fatal accident. They continued to use the same bill heads. Their bank account remained unchanged, and their checks were drawn in the same way. The firm name was unaltered in the city directory.
As parties hold themselves out to a community, so will they be bound on their contracts. McDonald vs. Millaudon, 5 La. 403; Grieff & Byrnes vs. Boudousquie & Fortier, 18 An. 631; Story on Partnership, 36; 3 Kent, 31.
In Baldey & Lightner vs. Breckinridge, 39 An. 660, the court say: “In point of fact there may have been no partnership, but that can not affect the rights and claims of plaintiffs who dealt with the de *1393 fendants as partners, and upon their own acts and representations to that effect.
“ Parties, though not .partners inter se, may be such as to third persons.”
We think this exception was properly overruled.
Notwithstanding the severance of trial the testimony on each of the trials was about the same.
The state of the appears jcase to be as follows, viz.:
On returning from West End toward the city the driver of the tally-ho took the] right-hand side of Oanal street coming in, and when he had reached the intersection of Carrollton avenue he attempted to cross over the track of the railroad to the other side, there being at that place a barricade erected so as to prevent travel upon the newly-graveled roadway on the side he was traveling. As a witness, the driver testified that before attempting to cross he looked and saw the approaching train, and, fully believing that he had sufficient time to cross the track ahead of the engine, he attempted to cross. The tally-ho was struck just in front of the rear wheels and completely demolished, six of the passengers being scooped into the engine. One jumped to the left hand, two to the right hand, and the plaintiffs’ son was killed.
This occurrence happened on a clear moonlight night, the railroad track was straight, and the headlight of the locomotive burning brightly, and the tally-ho carried regulation lights and Chinese lanterns besides.
The plaintiffs’ contention is that the driver of the tally-ho was guilty of great imprudence and want of care in attempting to cross, as he did, in front of a moving train and in full view of it, and that the defendants’ train was being run at a greater rate of speed than was prudent at the intersection of two important avenues of the city. That the engineer’s attention must have been attracted to the tallyho had it not have been for the|presence in his cab of a person who had no right to be there, the engineer being occupied at thi time with this visitor.
Therefore his conclusion is that both defendants are liable in solido.
The effort of counsel for McMahon & Sons was to show that the driver of the tally-ho was exceedingly careful in driving, and drove at a slow rate of speed; and to»put the blame upon the railroad' *1394 company on account of the reckless rate of speed at which it was being run at the time. While on the other hand, counsel for the railroad company use their best efforts to demonstrate from the evidence that the fault was exclusively that of the driver of the tally-ho, and resulted from his careless attempt to put his conveyance across the track, immediately in front of a rapidly approaching train, which was easily seen and plainly visible.
There can not be a doubt that the fault was upon one of the two, if not upon both — unless we are to adopt the theory that it was exclusively the fault of the driver of the tally-ho, and that he was the agent and servant of the passengers, and at their command and und.er their control and direction.
' Pretermitting any expression on that question for the present, we will first attend to the exception of no cause of action, which was tendered by the railroad company, and by the court a qua overruled ; and to which our attention is specially attracted by counsel for the railroad company.
It is to the effect that plaintiffs’ petition alleges that the immediate cause of the accident was the carelessness or negligence of the driver of the tally-ho on which the deceased was riding.
And the averment of the petition that is relied upon as sustaining the exception is the following, viz.:
That plaintiffs’ son, with others, “ hired of T. J. McMahon & Sons a wagonette, or tally-ho, driven by a driver, an employee of said firm; that said driver, when on Canal street in this city, at the intersection of Carrcllton avenue, attempted to cross the railroad track of the New Orleans City & Lake Railroad Company, when one of the trains of said company was approaching, when by reason of the approach of said train such attempt was dangerous, and that through the gross carelessness and recklessness of said driver in attempting said crossing, said wagonette was struck and demolished by the locomotive or dummy of the train;” particularly describing the manner of young Perez’ death.
Accepting this statement, the counsel for the railroad company say it is quite impossible for it to have been in fault, or guilty of negligence, if, as plaintiff alleges, the driver of the tally-ho attempted to put his conveyance across the railroad track when one of the company’s trains was approaching, “ when by reason of the approach of the said train such attempt was'dangerous, and that through the *1395 gross carelessness and recklessness of the driver said wagonette was struck,” and young Perez instantly killed.
And in this opinion we concur. The foregoing allegation is positive and unequivocal to the effect that when the driver attempted to cross the track the railroad train was dangerously near, and that he was guilty of gross carelessness and recklessness in attempting to cross. That admission of fact is binding on the plaintiffs, and there is no escape for them from its forre and effect.
Accepting that statement, how can it at the same time be true that the railroad company was at fault?
If the train was, at the time of the driver’s attempt to cross the track, dangerously near the crossing, it was certainly not to blame for the accident.
If this were an action by McMahon & Sons against the railroad company for damages, they certainly could not recover in the face of such an admission, and how can the plaintiff recover against the railroad company, having thus interposed as an independent, efficient cause, the gross negligence and carelessness of the driver of the wagonette?
We think it evident that the exception of the railroad company should have been sustained, and the suit, as to it, dismissed at plaintiffs’ cost. '
But with respect to the defendants, McMahon & Sons, the case is differently circumstanced. The plaintiffs’ son, with the other young gentlemen, hired from the defendants, T. J. McMahon & Sons, a tally-ho, a public conveyance, to transport them to West End and back to the city again. The defendants furnished the conveyance with a driver for a fixed and stipulated consideration. The defendants were engaged in the business of hiring conveyances, as they did on this occasion. That was their business. The only part the young gentlemen sustained to the transaction was that of persons who had, for a designated price, entered into a contraes of safe carriage with the defendants. The conveyance, as well as the team and driver, were at defendants’ exclusive risk, and their management and direction were under their control.
We find it pretty clearly established by the evidence that the driver was careful, and drove his team at a steady and moderate gait. On the way out, as well as on the return trip, to the point where the accident happened, nothing occurred which presents the *1396 appearance of recklessness on the part of the driver. But just as the driver came to the intersection of Carrollton avenue and Canal street, and finding the right-hand roadway blocked so as to impede his further progress, he attempted to cross his team to the opposite side, immediately in front of a rapidly approaching train. The night being clear, and there being no obstacle to impede his view, the driver must have been, and confessedly did see, the train, and was undoubtedly guilty of gross carelessness in attempting to cross, when by waiting a few seconds the passage could have been made with perfect safety.
The proof shows that the locomotive engineer could not possibly have slowed up his train in time to have prevented the accident, it having been less than a block away when the vehicle was first discovered. And we think this is apparent from the situation, as it is described by all the witnesses. It is true that the train was “ making time,” though not traveling faster than usual, and consequently it could not have been checked within the space of a single block. Therefore, the argument of the defendants, McMahon & Sons, can not avail them as an offset to the carelessness of their driver.
We do not regard the proof as showing, or the fact to be, that the plaintiff’s son was in any way identified with the driver, so as to defeat his action on account of his contributory fault. His seat in the tally-ho was at a little distance from the driver, and he was not in any manner directing or interfering with the movements of the train. Nor was this duty imposed upon him.
In Holzab vs. Railroad Co., 38 An. 185, quite a similar case is stated, and the court say:
“More elaborately stated, the doctrine is, that a party who is a passenger in a public conveyance is, in some way, identified with those who own or have charge of it, and that he can recover of the owner of another public conveyance that has collided with it and injured him thereby, only when they who own or have charge of the conveyance in which he is riding can recover — the principle being that their contributory negligence is imputable to him, so as to preclude his recovery from any injury when they can not recover in consequence of this negligence.
“ The doctrine was first asserted in Thorogood vs. Bryan, 8 C. B. 115, decided by the English Court of Common Pleas, and while gen *1397 erally followed in that country since, its correctness has been questioned there by high authority.
“In this country it has been followed by some courts and rejected by others.
“ It is so unjust to attribute to a passenger the negligence of the agents of the company in whose carriage he is riding; so untrue, in point of fact, that any identity exists between them; and so true that it can only be held to exist by a sort of legal fiction that it is not surprising there has been a judicial revolt against the doctrine.
“The only way in which the identification of a passenger with the driver or train conductor can result, is by holding the latter to be the servant of the former; but that can not be, because the passenger has no control over'the conductor; and the right to control the conduct of the servant is the foundation of the doctrine that the master is affected by such conduct, and is responsible for it., We should reject the doctrine as illogical and unjust, even in the face of authority as high as the English courts; but the question is set at rest for us'by a decision just rendered by the United States Supreme Court,” etc.
The case cited is Little vs. Hackett, 116 U. S. 366, the substance of the opinion being as follows, viz.:
“That a person who hires a hack and gives the driver directions as to the place to which he wishes to be conveyed, but exercises no other control over the conduct of the driver, is not responsible for his acts or negligence, or prevented from recovering against a railroad company for injuries suffered from a collision of its train with the hack, caused by the negligence of both managers of the train and of the driver.”
In the course of their opinion, the court reviewed the case of Thorogood vs. Bryan, cited supra, and disapprove of it, citing: Bennett vs. Railroad Company, 36 N. J. (Law) 225; Railway Company vs. Steinbrenner, 47 N. J. (Law) 161; Chapman vs. Railroad Company, 19 N. Y. 341; Dyer vs. Erie Railway Company, 71 N. Y. 228; Transfer Company vs. Kelley, 36 Ohio, 86; Wabash Railway Company vs. Schacklet, 105 Ill. 364; Danville Turnpike Company vs. Stewart, 2 Met. (Ky.) 119; Louisville, etc., Railway Company vs. Case, 9 Bush. 728; Cuddy vs. Horn, 46 Mich. 596; Tompkins vs. Railroad Company, 4th West Coast Reporter, 537.
The opinion then proceeds:
*1398 “ There is no distinction in principle whether the passengers be on a public conveyance like a railroad train, or an omnibus, or be on a hack hired from a public stand in the street for a drive. Those on the hack do not become responsible for the negligence of the driver, if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. * * * From the simple fact of hiring the carriage or riding in it, no such liability can arise. The party hiring, or riding must, in some way, have co-operated in producing the injury complained of before he incurs any liability for it.5?
In commenting upon the same question the New Jersey court said:
“ If the law were otherwise, not only the hirer of the coach, but also all the passengers in it, would be under the constraint to mount the box and superintend the conduct of the driver, in the management and control of his team, or be put for his remedy exclusively to an action against the irresponsible driver, or equally irresponsible owner of a coach taken, it may be, from a coach stand, for the consequences of an injury which was the product of the co-operating wrongful acts of the driver and of a third person; and that, too, though the passengers were ignorant of the character of the driver, and of the responsibility of the owner of the team, and were even strangers to the route over which they were to be carried.” New York, etc., Railroad vs. Steinbrenner, 47 N. J 161.
This case is quoted and approved in Little vs. Hackett. Counsel for McMahon & Sons press upon our attention two New York cases, which have been recently decided, and insist that they sustain the opposite theory; but the cases referred to do not carry out their idea.
The first is Hoag vs. the New York, etc., Railroad, 111 N. Y. 199; but that case presents the question of an accident which happened to a gentleman while driving his own team — his buggy colliding with a passing locomotive.
The second is Buckett vs. New York Railroad Co., 120 N. Y. 290; but that case presents the question of an accident happening to a gentleman while sitting by the side of the driver of a buggy which he had hired — the buggy colliding with a passing locomotive.
Those cases are not in point, because they were not public conveyances. But in no event can the authority of those cases prevail over the various authorities we have collated.
*1399 On the faith of those authorities we assume it to be a proposition definitely settled that passengers on a public vehicle, whether street ear, railway train, omnibus or tally-ho, do not exercise any control over the conductor or driver, unless they undertake to superintend and direct him further than to indicate the route which they wish to travel or the places to which they desire to go, and consequently do not become responsible for the negligence of the driver.
On this question the proof is clear to the effect that plaintiffs’ son did not, in any manner, interfere with the driver in the management of his team.
Our conclusion is that the driver was solely and exclusively at fault in recklessly attempting to drive a heavily laden tally-ho across the railroad track immediately in front of a rapidly advancing train, at the hour of eleven o’clock at night; whereas by patiently biding his time for only a few moments he could have driven across in perfect safety.
It was the duty of the driver to have looked and listened before attempting to cross the railroad track. And notwithstanding that he did look and did plainly see the approaching train — the night being clear and the headlight of the locomotive distinctly visible — the driver rashly undertook to drive his tally-ho, containing ten passengers, across the track immediately in front of it, scarcely a block away and moving at a confessedly rapid rate of speed.
As between McMahon & Sons and the railroad company the fault was clearly that of the former, though it may be that the speed of the train was greater than is usual and customary, for it can not be supposed that the conductor of the train, seeing the term of McMahon & Sons traveling along a parallel roadway, believed that he would attempt to make the crossing. Consequently, he was taken by surprise, and was unable to put his train in a position to avoid an accident.
Consequently, we must examine the evidence and ascertain the measure of damages.'
Plaintiffs put their claim to compensation upon the ground that their son was suddenly precipitated from the tally-ho against the locomotive by the collision of the two, and was thereby horribly mangled ; that his body was dragged for a distance of several hundred yards; that he suffered great pain of body and anxiety of mind, and shortly afterward died.
*1400 On this score five thousand dollars are alleged to have resulted in damages to their son, for the recovery of which the right of action “has survived by law” to them.
Their further claim is that as the parents of the deceased they are personally damaged in the killing of their son in the sum of twenty-five hundred dollars, occasioned by their own mental suffering and mental anguish upon ascertaining his sad fate and in beholding his frightfully mangled condition. They further allege that their son was about twenty years old, living with and working for them. That by his death they were deprived of his companionship and of his association and of his services, and on this score they claim twenty-five hundred dollars.
The proof discloses that the young man was in his twenty-first year at the time of his death. That he was a butcher in the market, and was working for his father, and had been so engaged since he was large enough to work. When his father first saw his son, during the night of the accident, he was dead. His body was horribly mangled. His parents were awakened from their sleep and informed of his death. It was a great shock.
Being interrogated as to the value of his- son’s services the father said: “He was my right hand.” That he was so well up in the business that he could “ trust the whole business to him and let him carry it on.”
The evidence does not definitely show what length of time elapsed between the happening of the accident and the death of young Perez; but there was sufficient time for the train to make the first telephone station and the conductor to send the Charity Hospital ambulance and students to the locality of the catastrophe to render assistance.
Nor does it show any estimation of the value of young Perez’ service to his father, that is to say, in dollars and cents.
Without, however, apportioning the same to the different items, our conclusion is to award to the plaintiffs the sum of fifteen hundred dollars, in full of their demands.
It is therefore ordered and decreed that in so far as the railroad company is concerned, the judgment be affirmed, but that in respect to T. J. McMahon & Sons, it be reversed; and it is further ordered and decreed that the plaintiffs do have and recover of T. J. McMahon & Sons the sum of fifteen hundred dollars, and one-half of all costs.