BLANCHARD, J.
Plaintiff is the holder of a promissory note for $4,000.00 and interest, executed in June, 1898, by Joseph Weil & Co., made payable to their own order and due one year after date.
The note is endorsed in blank by the, makers and also by Marx Levy & Bro,
The endorsement of the latter firm’s name is by Armand Levy — thus “Marx Levy & Bro., p. Armand Levy.”
The note was acquired by plaintiff before' its maturity and the consideration of its transfer to him by Joseph Weil & Co. was an indebtedness of $1,000.00 for loaned money which the firm owed him and which had matured, and a further loan of $3,000.00 in cash, which the plaintiff made to them at the time the note was executed.
Having caused the note to be protested for non-payment at its maturity, plaintiff brought this action against the two firms, and against those persons whom he averred to be the individual members of the firms, to recover against them in solido the amount of the note with interest.
He cumulated with this demand one for the annulment of certain transfers of property made by Armand Levy to his mother, which are alleged to have been either fraudulent simulations, or else contracts made in fraud of his rights as a creditor, and injurious to him. The allegation is made, in this connection, that the acts thus done were with the design of enabling Armand Levy, who was insolvent, to the knowledge of his mother, to defeat the pursuit of his creditors.
Those who are alleged to have composed the firm of Joseph Weil & Co. are Joseph and Daniel Weil and Armand Levy. There was no dispute as to this, and judgment by default against them in solido was confirmed and no appeal taken therefrom.
But that firm had failed in business and its members being insolvent, the judgment against them avails plaintiff nothing.
Those alleged to have composed the firm of Marx Levy & Bro. at the time of the endorsement of the note were Jacques Levy of St. Louis, Mo., and Mrs. Sarah Frank, widow of Marx Levy, deceased, Sarah Levy, Harriette Levy, Armand Levy and Florence Levy, a married woman — the four latter being the children and heirs of Marx Levy.
The firm had originally been composed of Marx Levy and his brother Jacques Levy. It had been engaged in business for many years.
Marx Levy died in November, 1896. Thereafter, plaintiff contends, the business of the firm in the old name was conducted for more than two years by Jacques Levy and the widow- and heirs of the dead man as partners, and that during that time the endorsement of the firm name, sued upon, was made by Armand Levy, managing partner, with full authority in the premises.
The substantial defense set up by the Levys is that, prior to the time the endorsement was made, the firm of Marx Levy & Bro. had been dissolved by the death of Marx Levy, and that Armand Levy was without authority to bind the firm, or its individual members, by such act; that the alleged endorsement was without consideration; that it was an accommodation endorsement so far as Marx Levy & Bro., or any of its members, were or are concerned; that even if the firm of Marx Levy & Bro. was still existent when the endorsement was made and Armand Levy was a member of it, he was without authority to endorse the firm’s name so as to bind it, or its members, for sucli an obligation; and that the plaintiff knew, when he took the endorsed note, the endorsement was without authority or consideration.
Their defense against the demand for the setting aside of the transfers made by Armand Levy to his mother is that the plaintiff is without interest to attack the transfers because the same do not affect injuriously any rights he may have, and it is denied *1039 that the same are fraudulent simulations or contracts.
The judgment of the trial court held Jacques Levy responsible in solido, with the members of the firm of Joseph Weil & Co., for the debt declared on by plaintiff. He appeals.
The trial court further held that the transfers made by Armand Levy to his mother were fraudulent preferences given the mother, a creditor, and Jacques Levy, a creditor (the latter sharing m the preference), over the plaintiff, a creditor, and annulling the same in so far as they affect the plaintiff. From this part of the judgment, the widow and Jacques Levy appeal.
As to the demand of the plaintiff for judgment in solido against Mrs. Sarah Frank, widow of Marx Levy, Sarah Levy, Harriette Levy and Florence Levy for the debt sued for, the same was rejected. This was tantamount to holding that said parties were not members of the firm of Marx Levy & Bro.
From this latter portion of the judgment the plaintiff has not, in this proceeding, appealed.
Ruling — The death of Marx Levy in 1896 dissolved the then existing partnership of Marx Levy & Bro. The firm were buyers and sellers of horses and mules and conducted business on a large scale.
Armand Levy.was the son of Marx Levy. It does not appear that he had been admitted as a member of the firm prior to his father’s death, but he certainly had much to do with conducting the business.
We find that the year before his father died the firm executed a power of attorney to him wherein authority was given him to make deposits, draw, sign and endorse notes, checks and bills of exchange, to draw whatever moneys the firm then lmd or might thereafter have on deposit, and, generally, to transact all of the business of the firm in its name, place and stead. The place of business of the firm was the City of New Orleans and Marx Levy and Armand Levy lived there. Jacques Levy, the brother of Marx Levy and the other member of the firm, was a non-resident of the State. He lived at St. Louis, and was in the stock buying and selling business in that Oity, or its vicinity.
Following the death of Marx Levy, his children and heirs being all of age, they and their mother opened his - succession. They represented he left an estate all of which was community in character and that he left debts to be paid.'
The widow -announced her acceptance of the community, and the heirs their unconditional acceptance of the succession.
They prayed for recognition of Mrs. Levy as widow in community and as such entitled to one half of the property in full ownership, and to the usufruct of the other half. They further prayed for recognition of the heirs (naming them) as sole heirs at law of the deceased and as such entitled to half of his estate, subject to the usufruct of their mother; and that they — their mother and themselves — be put into possession of the property of the estate as owners, etc.
A judgment of the court followed in accordance with this prayer.
On the same day this petition was presented to the Judge, and the day before the judgment sending into possession was signed, Mrs. Levy and her two unmarried daughters executed a power of attorney to the son and brother Armand Levy. The married daughter did not sign this act of procuration because, presumably, of her absence in New York, where she lived. Jacques Levy did not sign it because, presumably, of his absence in St. Louis, where he lived.
This power of attorney, it is claimed by the defense, only authorized Armand Levy to conduct the liquidation of the business of the late firm of Marx Levy & Bro.
As we appreciate its terms, it did much more than this. It not only gave him power of liquidation and settlement of the affairs of the firm, but authorized him “to represent them and each of them in all business matters and concerns in which they, or each of them, may now or hereafter be interested; * * * to draw, endorse and accept bills of exchange, make checks and draw money out of bank or banks wherein the same may have been or will be deposited in the name or for account of constituents or of the aforesaid firm; * * * to receive and attend to all shipments or consignments of merchandise or live stock that may be made to constituents, or the aforesaid firm, either for their own account or risk or that of others, and to pursue the instructions of the own *1041 ers or others interested herein, relative thereto; to receive and acknowledge notices of protest of all or any bills, drafts or promissory notes to which the said constituents * * * may be a party; to act for said constituents and be their substitute in all cases wherein they or either of them may be appointed the agent of others; * * * and generally to do and perform all and every other, act, matter and thing whatsoever as shall be requisite and necessary touching or concerning the affairs, business and concerns of the said constituents, or of said late firm, as fully, amply and effectually * * * as they, the said constituents, could or might do if personally present.”
A power to act for another could hardly be fuller than this. It went far beyond the mere liquidation of a dissolved partnership. It was a continuation of the power which Armand Levy had received from Marx Levy & Bro. prior to the death of Marx Levy.
The evidence shows that following the execution of the power of attorney, Armand Levy conducted the business for five or six months at the old stand in the name of Marx Levy & Bro. During this time he sold the stock on hand and realized large sums of money, and he also bought other stock and sold the same.
There was no change of signs, letter heads, printed envelopes, or firm signature. Perez v. Ry. Co., 47 La. Ann. 1392, 17 South. 869. Nowhere and on no occasion did he sign “Marx Levy & Bro. in liquidation.” It was merely Marx Levy & Bro. Nor was any notice of dissolution of the firm ever given.
Subsequently, their stables were leased and the office of Marx Levy & Bro. was removed to the establishment of Joseph Weil & Co., of which firm Armand Levy had become a member. There the firm of Marx Levy & Bro. continued until the failure of Joseph Weil & Co.
The bank account of the firm remained unchanged and checks were always signed in the old firm name. This continued for nearly two years and a half after the death of Marx Levy. The City Directory for 1897 and 1898 both gave the firm as a going concern, not merely in liquidation, and stated the membership of the same to be the Estate of Marx Levy and Jacques Levy. Perez v. Ry. Co., 47 La. Ann. 1392, 17 South. 869.
Within the year following the death of his father, Armand Levy recalls remitting to Jacques Levy alone from $59,000.00 to $65,000.00. This was (say) at the rate of $5,000.00 per month, or $1,250.00 per week going in this channel alone. And these large sums were forwarded in the shape of exchange bought at the various banks in New Orleans and the checks paying for same were signed in the name of Marx Levy & Bro.
It is in evidence that besides its dealings with the banks .there were dealings with commercial firms in the name of Marx Levy & Bro.
And during these two or more years following the death of Marx Levy, the firm of Marx Levy & Bro. engaged in an extensive “kiting” business with and for the benefit of Joseph Weil & Co.
“Kiting” in commercial parlance means the lending by one commercial firm to another of its credit. Thus, one friendly firm would borrow from another its check, draft, note, bill or endorsement to tide over an immediate necessity for money. And when occasion arose the other firm would return the favor.
The evidence establishes that “kiting” obtains as a custom in the City.of New Orleans.
This “kiting” business, so far as the firms of Marx Levy & Bro. and Joseph Weil & Co. were concerned, had been going on between the firms for years prior to the death of Marx Levy. It continued on an extensive scale after his death. When Weil & Co. wanted an accommodation of this kind, Armand Levy, sometimes in his own name, sometimes in the name of Marx Levy & Bro., would draw on Jacques Levy or Jacques Levy’s firm in St. Louis. Weil & Co. would have such drafts or bills discounted and use the proceeds. Jacques Levy would pay the drafts at St. Louis, and to recoup himself or his firm would draw back on Joseph Weil & Co., or Marx Levy & Bro. in New Orleans.
These drafts averaged about three’ thousand each, but the aggregate of the same, to quote Armand Levy himself, “ran up into the hundreds of thousands.”
These drafts and their payment by Jacques Levy, or his St. Louis house, suffice *1043 to fasten upon Jacques Levy knowledge of, and acquiescence in, the fact that the firm of Marx Levy & Bro. (of which he was a member) was still a going concern in New Orleans, and its manager in that City was using the firm name and credit to accommodate friendly concerns.
Most of these accommodations were in the form of bills, checks, or drafts, but sometimes the favor was extended in the shape of the endorsement of Marx Levy & Bro. on notes.
Such an accommodation was extended Weil & Oo. when Armand Levy, for Marx Levy & Bro. endorsed the note given to the plaintiff; and it is established that he did the same on other notes which passed to other parties and were paid with the full knowledge at least of Jacques Levy and the mother of Armand Levy.
The contention of the defendants that the accommodation drafts drawn on Jacques Levy by Armand Levy were in the name of the latter alone, is negatived by the testimony. Many.of them were drawn by him in the name of Marx Levy & Bro.
If it were as defendants contended for, the evidence was accessible to them to show it conclusively. They took the testimony of Jacqu.es Levy under commission, and as he had paid the drafts he had them in his possession, and the best evidence as to the manner of their drawing would have been the production of the drafts themselves. This was not done. His counsel did not call for them.
When effective proofs are within the reach of a party and he fails to produce them, a presumption is raised that they would, if produced, make against him. Best on Evi. p. 277; Pruyn v. Young, Sheriff, 51 La. Ann. 320, 25 South. 125; Crescent City Ice Co. v. Ermann, 36 La. Ann. 841.
This exchange of drafts went on up to the date of the failure of Joseph Weil & Co., and when the latter house failed it owed Marx Levy & Bro. a balance on this account of something more than $35,000.00.
Jos. Weil testified that he received on an average two cheeks a week, of this kind, drawn in the name of Marx Levy & Bro. Each cheek of this character, so drawn, served to notify the commercial public that Marx Levy & Bro. was a going concern, that Armand Levy was its active manager, and that it was accommodating with its name and credit Joseph Weil & Co.
That these things were taking place and Jacques Levy and the mother and sisters of Armand Levy, whose power of attorney he held practically for all purposes, did not know it, is preposterous. The record teems with facts and circumstances that brought home to them, or should have brought home to them, knowledge that Armand Levy was conducting business in the name of Marx Levy & Bro. with themselves and him as partners, and holding that firm out to the-world as a going concern.
Especially will it not do for Jacques Levy to say he was ignorant of what was being done in New Orleans by Armand Levy in the firm’s name. It was his business to know. Besides his knowledge of it derived from the drafts he paid in St. Louis drawn in the firm’s name, he came to New Orleans on several occasions while these things were going on, stopped in the same house with Armand Levy (the residence of the latter’s mother) and made his business head-quarters in the same place where Armand Levy was conducting the firm’s affairs. The books-were there. He should have acquainted himself with what they showed.
Whatever a party should know and has-opportunity of knowing, he is presumed, as to innocent third persons, to have known, Hoyt v. Sprague, 103 U. S. 637, 26 L. Ed. 585; Cady v. Shepherd, 11 Pick. 403, 22 Am. Dec. 379; R. R. Co. v. Schuyler, 34 N. Y. 59.
Jacques Levy, by permitting his name to-remain in the partnership, imparted to it a credit it might not otherwise have obtained. He permitted Armand Levy to do business as-though the old firm were still a going concern. He thus consented to the holding of himself out to the community as still a partner, and as parties hold themselves out to a community so will they be bound on their contracts. Perez v. Ry. Co., 47 La. Ann. 1392, 17 South. 869.
If one lends his name as a partner, or suffers his name to be used in the business, he is responsible to third persons as a partner, for he may induce third persons to give credit to the firm or establishment which otherwise it would not enjoy. Grieff & *1045 Byrnes v. Boudousquie & Fortier, 18 La. Ann. 631, 89 Am. Dec. 698; Baldey & Lightner v. Brackenridge, 39 La. Ann. 663, 2 South. 410; Houston River Canal Co. v. Kopke, 106 La. 609, 31 South. 156.
When the fact of continuing partnership is clearly shown, and that which was done for which liability is claimed is one of many acts of the same or similar character well known to the party sought to be charged, plaintiff-will not be required to show that he knew of the continuation of the partnership, or of such party’s knowledge of the particular act in question from which liability is claimed to result. Robertson v. De Lizardi, 4 Rob. 314.
While this principle of law is well established the case does not stand alone upon its invocation. Johnson, the plaintiff, testified that he looked upon the firm as continuing and had no knowledge tending to show otherwise. He had known the house a long time as prominent in business in the City in which he lived. Mark Johnson, father of the plaintiff, and who effected the loan in question for his son, testifies that Marx Levy & Bro. was considered to be a going concern, otherwise he would not have accepted their endorsement on the note as sufficient security. And there was a letter from Weil & Co. to Mark Johnson offering Marx Levy & Bro. as security for the loan they solicited, and in the letter the firm of Marx Levy & Bro. is spoken of as an existing partnership, and it is mentioned that its members are the heirs of Marx Levy, mule merchants, and Jacques Levy, of the National Stock Yards of St. Clair County, Illinois. It is further stated in the letter that the firm “are gilt-edged.” This letter is dated the same day the note sued on is dated.
But the most formal evidence found in the record demonstrating that the firm of Marx Levy & Bro. was continued after the death of Marx Levy, with his widow and heirs taking his place in the firm, and, along with Jacques Levy, constituting a new partnership, are the judicial admissions of those parties contained in two suits instituted in the Civil District Court for the Parish of Orleans.
In March, 1897, three months after Marx Levy’s death, a suit was brought against one Mitchell by Marx Levy & Bro. (not Marx Levy & Bro. in liquidation, but simply “Marx Levy & Bro.”), and the petition starts out with declaring that they are “a firm domiciled and doing business in this City and composed as will be detailed in the pleadings to be hereafter filed.” The peti-' tion invokes one of the conservatory writs and its allegations had to be verified by oath. So, Armand Levy made the oath and in it he deposes he is a member of the firm of Marx Levy & Bro. and that all the averments of the petition are true.
He was not a member of the old firm of Marx Levy & Bro., and, therefore, could only be a member of the new firm continued in the old name by the widow and heirs of Marx Levy, and the surviving partner of the old. firm — Jacques Levy.
It does not appear that any subsequent pleading was filed, as the petition promised would be done, giving the names of those who composed the then existing firm of Marx Levy & Bro., but the case went to judgment and under such judgment in its favor the firm of Marx Levy & Bro. caused property to be seized and advertised and sold — the advertisement giving the caption “Marx Levy & Bro. vs. T. J. Mitchell.”
Subsequently, in March, 1898, sixteen months after Marx Levy’s death, the firm of Marx Levy & Bro. again resorted to law and instituted suit against Mrs. Matilda Moss and husband to recover the amount of a promissory note given in 1894. The opening paragraph of this proceeding is as follows:—
“The petition of Marx Levy & Bro., a firm domiciled and doing business in this City, and composed of Jacques Levy, a resident of the City of St. Louis, Mo., and the widow and heirs of the late Marx Levy, to wit:— Mrs. Sarah Frank, widow of the said deceased. Misses Marie and Harriette Levy, residents of this City, Mrs. Florence Levy, wife of Geo. W. ICetch, by her said husband herein duly aided and authorized, a resident of the City of New York, and of Armand Levy, a resident of the City of New Orleans.”
Along in the petition is this further allegation:—
“That all the members of your petitioner’s *1047 firm are above the age of majority, except Armand. Levy who has been emancipated and relieved of all disabilities which attach to minors, under and by virtue of a judgment of this Honorable Oourt.”
Now, the note sued upon in the instant case, is dated June 13, 1898, just three months after this last, precise, solemn judicial declaration of these very defendants themselves that the firm of Marx Levy & Bro. was still doing business in New Orleans alnd that they were members of it.
It will be observed that these suits by the firm of Marx Levy & Bro. were not merely acts of administration in the process of liquidation of the affairs of the old firm.
They were avowedly suits by a new firm, called after the name of the old, and of which new parties, to wit: Mrs. Levy, her three daughters and her son, along with Jacques Levy of the old firm, were judicially declared to be members.
The law holds parties to their allegations of record. Such averments are the highest evidence against those who make them. Nor will,they be permitted to, deny or contradict that which they thus’ solemnly declare in a judicial proceeding. Gaudet v. Gauthreaux, 40 La. Ann. 189, 3 South. 645; Williams v. Gilkeson Sloss Co., 45 La. Ann. 1017, 13 South. 394.
While this rule is not without its exceptions, the case here presented does not fall within any of the same.
We hold it fully established that cither the old firm of Marx Levy & Bro. was continued after the death of Marx Levy, with his widow and heirs and Jacques Levy as partners, or that a new firm was organized bearing the old name, with the parties named as members.
We hold it further established that Jacques Levy was fully cognizant of the accommodations the firm was extending to Joseph Weil & Co., such as the loan of its credit by bills, drafts, checks and endorsements, and acquiesced in same during a long period of time, or else failed to put a stop to it, or to give notice in the business community where those things were done that he would not be responsible.
In consequence, he is bound by these acts of Armand Levy his fellow partner. Rev. Civ. Code, arts. 1811, 1816, 1817; Bank v. Weston (N. Y.) 54 N. E. 40, 45 L. R. A. 547; Beach v. State Bank, 2 Ind. 488; Darling v. March, 22 Me. 184.
We pass no opinion upon the liability vel non of the other members of the firm, for the reason that the plaintiff has not appealed from the decree below releasing them.
In April, 1899, Armand Levy executed five different acts of sale to his mother, purporting to transfer, together, his entire interest in the property, real and personal, of the estate of his deceased father. These acts were all passed on the same day and constituted a disposition omnium bonorum by Armand Levy.
He was hopelessly insolvent at the time to the knowledge of his vendee and Jacques Levy.
His mother was his creditor. The intention of the parties was to place the property beyond the pursuit of Armand’s creditors and give his mother and Jacques Levy, also his creditor, a preference.
One of the acts of sale, purporting to convey his interest in valuable real estate in the City of New Orleans, recites that the consideration is $2,699.34, for which the vendee executed two notes, 'each for $1,349.67, due one at four years the other five years from date, with 5% interest. These notes were passed to Jacques Levy and therein lies the preference extended to him.
These several acts were held by the trial Judge to be fraudulent contracts and we quite agree with him in that conclusion. And the parties to them were in bad faith. Hence the purchaser is entitled to no restitution, unless it be proved that the consideration enured to the benefit of the creditors of Marx Levy & Bro., and this is not shown. Barker v. Phillips, 11 Rob. 190; Chaffe v. Gill, 43 La. Ann. 1054, 10 South. 361; Rev. Civ. Code, art. 1982.
Besides, Mrs. Levy paid nothing to be restored, and it is not shown that Jacques Levs'-, to whom the notes were sent, has disposed of them. So far, then, as the parties hereto are concerned, this branch of the case must be disposed of as though the notes are still the property of Jacques Levy.
The proper judgment to have been rendered was one setting aside the sales in so far *1049 as they affected the plaintiff herein, and decreeing that the property, which was'the object of the sales, or its value to the amount of plaintiff’s claim, be applied to the payment of plaintiff. Rev. Civ. Code, art. 1977; Succession of Schultz, 39 La. Ann. 505, 2 South. 47.
This would leave to Mrs. Levy the option to satisfy plaintiff’s demand, or to surrender the property to the sheriff to he sold. Lucas v. D’Armond, 11 La. Ann. 168. Amendment of the judgment is asked hy appellee.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court, in so far as it condemns Jacques Levy in solido, with the members of the firm of Joseph Weil & Oo., to pay and satisfy the demand of the plaintiff as herein set up, he affirmed.
It is further ordered, &c., that the remainder of the judgment of the District Court, in so far as the same has heen appealed from, he amended so as to read as follows: — It is adjudged that the conveyances made by Armand Levy to Mrs. Sarah Frank Levy in five several acts passed before Ohas. A. Butler, notary, on April 1, 1899, of his interest in certain real and personal property described in said acts, are fraudulent and unlawful preferences extended to the said Mrs. Sarah Frank Levy and Jacques Levy over the plaintiff herein, and it is ordered and decreed that the same be avoided and annulled in so far as they affect the plaintiff and his rights as adjudicated and determined in this cause, and that the interest of the said Armand Levy in said property, or its value to the amount of plaintiff’s judgment, be applied to the payment of the judgment, and to this end Mrs. Sarah Frank Levy has the option, within thirty days from the time this judgment becomes final, to satisfy plaintiff’s demand, or to surrender the interest of the said Armand Levy in the property to the sheriff to be sold, and if she does neither, it is ordered that the interest of the said Armand Levy in the property he seized and sold in satisfaction of the plaintiff’s demand as liquidated hy the judgment herein rendered.
It is further ordered, &c., that this part of the judgment appealed from as thus amended be affirmed — costs of both courts to be paid by the appellants.