(33 South. 750.)

No. 14,350.

WELTY v. ST. CHARLES ST. R. CO.

(Feb. 16, 1903.)

**STREET RAILROADS—COLLISION WITH WAGON —PETITION.**

1. A personal injury suit, in which an exception of no cause of action was sustained in the district court. The judgment is reversed as erroneous, and the cause remanded for trial on the merits.

(Syllabus by the Court.)

Appeal from 'civil district court, parish of Orleans; George H. Théard, Judge.

Action by Emile Welty against the St. Charles Street Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed.

Foster, Milling, Godchaux & Sanders, for appellant. Harry H. Hall, for appellee.

Statement of the Case.

NICHOLLS, C. J. The plaintiff has appealed from a judgment sustaining an exception of no cause of action and dismissing his suit. The petition excepted to was as follows:

"That during the month of June, 1901, petitioner was employed by the Jackson Brewing Company of New Orleans as driver of a four-wheel beer wagon, which wagon was drawn by two horses. That on the 7th day of June, 1901, whilst engaged in his daily avocation as aforesaid, it became necessary for him, in the performance of his duty, to drive said wagon out St. Peter street, from Chartres street to Bourbon street, and in doing so to cross Royal street, all in the city of New Orleans. That on the morning aforesaid, whilst driving his wagon aforesaid, and whilst at the intersection of St. Peter and Royal streets aforesaid, the wagon driven by petitioner was run into by a street car owned, operated, and controlled by the St. Charles Street Railroad Company. Petitioner showed that when he arrived at the intersection of St. Peter and Royal streets he stopped his wagon, with his horses' heads just free of the river-side rail of the street car track of the said St. Charles Street Railroad Company on said Royal street, and looked and listened to observe the approach of any car, wagon, etc., that might prevent or retard his passing across said track at said intersection. Petitioner shows: That he saw said car of defendant company on said track, coming from the direction of St. Ann street, and distant from him about two hundred (200) feet. That he put his horses in motion and attempted to cross said track, and that, before he could get across and clear said track, said car ran into and collided with his said wagon. That the force of said collision was such as to throw said wagon off the perpendicular, and to cause it to lean or tilt far over, the side struck being raised several feet in the air. That a fellow employé, who was riding on the front seat with petitioner, was cast violently out of said wagon. That petitioner had reasonable grounds for believing, and did believe, that said wagon, which, with its contents, weighed about five thousand

pounds, would be overturned by the force of said impact, and he be caught beneath said great weight, thereby causing his death or grievous bodily injury to him. That he had reasonable grounds for believing, and did believe, said danger to be imminent, impending, and present. That, in order to avoid said injury, and on reasonable grounds believing it his only means of escaping same, petitioner did jump from said wagon from the side opposite to that towards which said wagon seemed to be falling.

"That said team of horses, frightened and excited by the force and noise of said collision, plunged forward just as he jumped from said wagon, dragging said wagon over him and breaking both his legs below the knee, each leg being broken in two places.

"That when he started across said track he had reason to believe, and did believe, that said car was traveling at an ordinary rate of speed, and alleges that, had said car been traveling at an ordinary rate of speed, he would have had ample time to cross said track in safety. Petitioner further avers: That in fact said car was being operated at an exceedingly high and unlawful rate of speed, and that it was gross negligence and recklessness on the part of said company to so operate its cars.

"That the motorman, the agent of defendant in charge of said car, made no proper effort, if any, to avert said collision, which would have been avoided had he made such effort, and that said breaking of petitioner's legs, and said collision, were due directly, entirely, and solely to the fault, negligence, carelessness, and wanton disregard for petitioner's rights and safety, on the part of the St. Charles Street Railroad Company, its officers and employés.

"That he was a laboring man, and that his family and himself were and are dependent upon his daily work for means of livelihood, and that, at the time of said accident, his salary as driver of said wagon was $60 per month, and that his employer had agreed to pay him $75 per month salary, beginning from July 1, 1901. Petitioner alleges: That he is about thirty-eight years of age. That prior to said injury he was of robust health, was endowed with a splendid constitution, and was a hard-working, industrious man, rarely out of employment. That, owing to said injury, he was confined to the Charity Hospital in this city for about three months, undergoing medical treatment involving constant pain, both physical and mental. That he has not yet regained the use of his legs. That his health and constitution have been shattered. That he still suffers untold pain and anguish. That he is informed by competent physicians, and so alleges, that he will be a cripple for life, and will never regain full use and strength of his body or legs.

"That said injury, from the date thereof, has rendered him incapable of doing any labor whatever, and from earning a livelihood for himself and family; and that said injury will continue so to incapacitate him.

"That by reason of said injuries the St. Charles Street Railroad Company is indebted to him in damages in compensation thereof, in the following amounts and items, to wit:

"(1) For the physical pain he has suffered and will continue to suffer, ten thousand dollars ($10,000).

"(2) For the mental suffering and anguish he has experienced and will continue to experience, five thousand dollars ($5,000).

"(3) For the wages lost from July 1st to Dec. 6th, at the rate of $75 per month, three hundred and ninety dollars ($390).

"(4) For deprivation of means of livelihood and capacity to labor, twenty thousand dollars ($20,000).

"(5) For permanent injury to legs and shattering of his health and constitution, ten thousand dollars ($10,000).

"That he has made due amicable demand for the payment of said damages, without avail.

"In view of the premises, petitioner prays that said St. Charles Street Railroad Company be cited, and that after due proceedings there be judgment in favor of petitioner and against the said St. Charles Street Railroad Company for the full sum of forty-five thousand three hundred and ninety dollars ($45,390), with legal interest thereon from judicial demand. He further prays for all orders necessary, for general and equitable relief, and for trial by jury."

### Opinion.

Defendant insists that plaintiff's petition, on its face, shows a state of facts which negatives the idea of negligence on its part,

and discloses, on the contrary, that plaintiff himself was at fault.

In support of the first contention, he cites Schulte v. Railroad Co., 44 La. Ann. 511, 10 South. 811; Snider v. Railroad, 48 La. Ann. 12, 18 South. 695; O'Rourke v. Railroad, 51 La. Ann. 755, 25 South. 323; and Knoker v. Railroad, 52 La. Ann. 806, 27 South. 279; and in support of the second, Booth on Street Railways, section 304; Guilloz v. Railroad Co. (Mich.) 65 N. W. 666; Savannah, T. & I. of H. Ry. v. Beasley (Ga.) 21 S. E. 285; Blakeslee v. Railroad Co. (Mich.) 63 N. W. 401—were referred to by him. Schulte v. Railroad Co., 44 La. Ann. 511, 10 South. 811, and authorities cited therein; Perez v. Railroad Co., 47 La. Ann. 1391, 17 South. 869; Snider v. Railroad, 48 La. Ann. 1, 18 South. 695; Perez v. Railroad Co., 47 La. Ann. 1399, 17 South. 869; Hemingway v. Railroad, 50 La. Ann. 1087, 23 South. 952; and Dieck v. N. O. C. & L. R. R., 51 La. Ann. 262, 25 South. 71.

The syllabus to the brief filed in his behalf shows the positions taken by him to be:

"1st. Where the motoneer of an electric car sees a man or wagon standing near the track, apparently waiting for the car to pass, he is justified by his experience in assuming that the man or driver of the wagon will wait for the car to pass before attempting to cross the track, and it is not negligence for him to act upon that assumption and not stop the car.

"2d. Electric cars are run at great speed in the interest of rapid transit, and every person is bound to look and listen.

"3d. One approaching a street crossing of a railway track, upon which are operated either steam or electric cars, is bound to look and listen for the approaching train or car, and his failure so to do is negligence, which, in case of collision, will prevent his recovery of damages for injuries received.

"4th. It is not sufficient that he should stop and listen in order to relieve himself from the imputation of contributory negligence. He must use his faculties with discrimination.

"5th. It is the plain duty of one wishing to cross an electric track, if he sees an approaching car, to halt until the same passes by, rather than take the risk of an accident by attempting to cross the track in front of it. Failing to take this necessary precaution for his safety, he is guilty of contributory negligence."

Appellee specially relies upon the decision of this court in Hemingway v. The New Orleans City & Lake Railroad Company, 50 La. Ann. 1087, 23 South. 952, in which the pleadings were to some extent identical with those in the present case. He overlooks, in citing that decision, the fact that an exception of no cause of action had been filed and overruled in the district court, and that on appeal this ruling was sustained, although the case itself, under the evidence adduced, was decided against the plaintiff.

The principles announced in the five paragraphs of the syllabus of defendant's brief are doubtless correct, when applied to a certain, ascertained state of facts, but it would be manifestly improper to apply them as embodying fixed rules of law, to be used in each and every case, independently of the special facts connected with the same.

In the Hemingway Case plaintiff averred that he had stopped, looked, and listened for any car which might be approaching, and admitted that he saw one approaching. He averred that the car was about 700 feet away, and that there was ample time for his horse and wagon to have crossed the track; that thereupon he did proceed to carefully drive and guide his horse and wagon over the crossing, in plain view of defendant's servants, who then had complete and absolute control of the car; that then and there it became their duty to reduce the speed of the car, and prevent the car from moving at a very high rate of speed, but disregarding that duty, and wholly disregarding the presence of his horse and wagon, and his presence, they would not, and did not, reduce the speed, but permitted it to move on at its highest and greatest speed, until it ran upon the body of his wagon with great force and violence.

On the trial of the case the positions of the car and of the horse and wagon at the time of the crossing were established by the testimony. This court declared that, by mathematical calculation, it was demonstrated that a collision was inevitable, unless the car could be stopped, and that seemed impossible; that the proof showed indisputably that the motoneer tried unavailingly to ar-

rest the speed of the car; that, having seen the horse and wagon at rest, there was no occasion for him to have made that attempt until after the horse and wagon were suddenly put in motion, and then the brief space of eight seconds was too short a space to render his efforts available.

It will be seen that there was no claim made in that case that the car was running at an illegal rate of speed, and that in consequence of that fact the car, which could otherwise have been stopped, was not stopped. On the contrary, the only charge was that, though it was under absolute control, it was not attempted to be stopped. The court held that, under the condition of things shown by the evidence, the plaintiff was not justified in attempting to cross the track; that he himself had not acted as prudently and cautiously as the occasion required, while negligence or fault imputable to the defendant in the premises had not been shown. The court was not called on to say what the legal situation would have been, had it been shown that the plaintiff's attempted crossing was sufficiently prudent and cautious, in view of the speed at which the car could reasonably have been expected to have been running, and should have been running, at that place, and had it been shown that the collision was due to, and the direct consequence of, the improper rate of speed at which it was moving. The plaintiff, by his pleadings and his admissions, has narrowed the issues to be determined in this case, but enough remains, if the allegations are sustained by proper and sufficient evidence, upon which a judgment for the plaintiff could be legally based. Whether plaintiff's attempted crossing of Royal street, under the circumstances it was made, was improper, and without due caution, is a matter open for inquiry, as are the conduct and actions of those who were operating the car at the time.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is hereby adjudged and decreed that the exception of no cause of action filed by the defendant be, and the same is, overruled, and this cause is remanded to the lower court, to be proceeded with according to law.