BREAUX, C. J.
The defendant, George Tomsa, charged with murder, found guilty of manslaughter, sentenced to the penitentiary for 21 years and to pay a fine of $1,000, appeals to this court.
Eleven bills of exceptions were taken by defendant’s attorneys. Several based on the same ground.will be considered together as one.
.Motion to quash:
On defendant’s motion to quash, on the ground that a grand juror was not a bona fide resident of the parish for one year next preceding his service on the grand jury, it appears that this grand juror left the state for Texas, where he was employed for one year, from December 16, 1908, to the same date of the following December.
He testified: That he never had the intention of permanently residing in Texas. He was employed for the year. 1-Ie left his family in this state at the place he considered his home in the parish of Iberville. His intention was to return after his term of employment.
We hold: Absence during the year preceding the service of a juror, without any intention of changing citizenship or of establishing a new residence, is not necessarily a ground to disqualify a juror, if it be evident that he did not intend to abandon his home where he supports wife and children.
The point was decided in State v. Alexander, 35 La. Ann. 1100. It was affirmed in State v. Wimby, 119 La. 139, 43 South. 984, 12 L. R. A. (N. S.) 98, 121 Am. St. Rep. 507.
We will not discuss the facts of the decision cited by the defense. It is sufficient to state that the decision holds, “We see no objection to this doctrine,” referring to the case of Tullos v. Lane, 45 La. Ann. 333, 12 South. 508, in which this court held that the merely temporary absence of the citizen will not be considered an abandonment of the residence.
In every way it is evident that he left for the purpose of working elsewhere in order to provide for himself and his family, to whom he expected to return.
It was in order to better maintain his home, to provide for those dependent upon him.
*685 In order for it to be an abandonment there must considerable time elapse after leaving, together with some evidence of intention to abandon the residence.
There was neither in this instance.
The decision in State v. Alexander, 35 La. Ann. 1100, is not in point.
“Mere temporary absence from the state, during the year prior to the service of a juror, if without the intention of changing citizenship or abandoning residence, will not destroy the qualification of a juror.”
From the foregoing, it is evident that there was no good ground to quash the indictment.
Not the best evidence:
The next point urged by the defense is that the hat of the deceased was not offered in evidence. The witness had been permitted to testify where the buckshot from defendant’s gun pierced the hat. The hat was not produced in court, though it was at a ferry landing somewhere within the limits of the town in which the case was tried.
The witness was properly heard to testify about the shots that pierced the hat without introducing the hat in evidence.
It does not appear that the prosecuting officer knew anything about the hat, or that he had it in his power to produce it in court.
It is stated that the witness swore that it was at a landing at some distance from the courthouse.
The state could not be required to stop the proceedings to enable the prosecuting attorney to go out in search of the hat, return after the search, and offer it in evidence, if found. It does not appear that the hat was within the reach of the prosecuting officer.
Overt act and evidence of prior threats and of character of the deceased:
The defense offered to introduce evidence of a quarrel, of threats, and of the dangerous character of the deceased.
The district attorney objected to the evidence on the ground that the foundation had not been laid.
The court did not permit the evidence of threats and quarrel to go to the jury and maintained the objection of the district attorney.
The point is stated in five different bills of exceptions. They will be considered as if presented in one bill of exceptions.
First as to the overt act: The first witness relied upon by the defense to prove an overt act, whose name was Collins, a brother-in-law of the defendant, whose testimony forms part of the bill of exceptions, testified that just previous to the homicide defendant asked deceased if he was carrying that gun for him; that the deceased made a motion to raise his gun a moment before defendant shot.
The other witness, McDonald, was not related to any of the parties. I-Ie also testified as to the hostile attitude of the deceased; that he was in the act of raising his gun.
This is the testimony upon which defendant relies as the foundation for admitting evidence of threat, or previous quarrel, and the dangerous character of the deceased.
We infer that the testimony of these two witnesses was heard by the jury.
After it had been heard, a copy of the testimony of each was offered as sufficient foundation.
The witness McDonald said:
“When the deceased made the motion to level his gun, the accused, getting his gun to his shoulder, fired and killed the deceased.”
The statement of the trial court is to the contrary. He observed these witnesses, heard them testify, and was not impressed by their testimony; in other words, he did not believe them.
The statement of the judge, made part of the bill of exceptions, is:
“That the evidence of Collins was not sufficient to overcome proof that had been presented that there was no overt act on the part of the deceased.”
*687 In another per curiam, made part of another bill of exceptions, he states: That the fact “was clearly established during the trial that the deceased made no overt act or hostile demonstration, as stated by Collins. That the evidence showed that the gun carried by the deceased was found immediately after the shooting under the body of the deceased in such a position as to make it impossible for the deceased to have had it in his hands at the time of the shooting, as stated by Collins. That it was further clearly established that at the time of the shooting the deceased was not facing the accused, and that it was impossible for the deceased to have seen the accused when the shot was fired. That the location of the wound, bach of the ear, showed that it was impossible for the deceased to have been facing the accused at the time of the shooting.” That the testimony of Collins was not considered true, and that of McDonald was not corroborated but contradicted.
In the motion for a new trial, which was overruled and is now before us by a bill of exceptions, the defense complained of the court’s ruling in holding that no overt act had been proven and of the refusal of the court to permit witnesses to testify as to the prior difficulty, or as to threats.
As relates to the asserted overt act of the deceased and the offer to prove a quarrel and threats and the character of the deceased: The evidence as related to the particular point should be as complete as possible. It was not complete.
The defense cannot be heard to prove threats if he selects his evidence.
Our ruling is, in order to avoid, as far as possible, a prolific source of disputes, that whenever the defendant’s counsel intends to offer evidence of threats, of character, or any other similar evidence, he shall notify the judge at the beginning of the trial of his intention, and shall then direct the clerk to write the testimony and annex it to a bill of exceptions.
If there be refusal, and a proper bill of exceptions taken, the verdict will be annulled and the case remanded.
When the foregoing will have been complied with, the court will be in a position to see to the taking of all the testimony, and the defendant to have the ruling reviewed.
This affords equal rights to all parties.
In both the Golden Case, 113 La. 791, 37 South. 757, and Feazell Case, 116 La. 264, 40 South. 698, the court held that it would review the decision of the district court upon this point, but the evidence must be clear and convincing to authorize interference.
The other ground is without merit.
It is that, when, during the trial, the district attorney asked the judge to make a ruling and request counsel for the accused not to propound questions trenching on prior rulings of the court, the judge, to the request of the district attorney, replied that the question did not strengthen his case.
A bill of exceptions was reserved to the judge’s refusal to allow the clerk to take down the remark as he had heard it.
Going back to the words complained of:
They were not prejudicial to the accused, even conceding that they were those stated. The judge denies that he uttered them. But, even if they were as alleged, they had no tendency to prejudice the cause. It was a casual remark, we take it, in answer to the request of the prosecuting officer, not calculated to influence the jury. Besides, the bill does not state that it was heard by the jury. If the jury heard it, there was nothing said to which to attach any importance.
For reasons stated, and the law and the evidence being in favor of the state, the verdict and judgment be, and the same are, hereby affirmed.