(89 South. 680)

No. 24663.

STATE v. FOSTER et al.

(June 30, 1921. Rehearing Denied Oct. 4, 1921.)

*(Syllabus by the Court.)*

1. Criminal law ⊜⇒795(2)—Indictment and information ⊜⇒189(4)—Defendant may be convicted of included offenses; where evidence tends to reduce major offense to an included minor offense, defendant is entitled to an instruction thereon.

The several offenses, assault with a dangerous weapon, assault and battery, assault, are ingredients of the offense of willfully and maliciously, with a dangerous weapon, inflicting a wound less than mayhem. These minor offenses are necessarily included in a charge of the major offense last mentioned. A conviction of either would be responsive to such charge; and in a trial thereon, if there be any evidence tending to reduce the major offense so charged to either of such minor offenses, the defendant is entitled to have the jury instructed that, if they find the evidence insufficient for a conviction of the major offense, but sufficient to convict of either of such minor offenses, they may bring in their verdict accordingly; the opinion of the judge in such case as to the credibility of the evidence or its sufficiency being immaterial, since the jurisdiction vested in the jury is exclusive.

2. Criminal law ⊜⇒1122(4)—Where court states charge refused was inapplicable to evidence, not included in the bill, the charge cannot be considered.

A bill of exception reserved to the refusal of the trial judge to give a special charge in a criminal case cannot be considered by this court. when from the statement per curiam attached to the bill it appears that the charge would have been inapplicable to any facts es-

tablished or evidence adduced, and neither the evidence nor statement of the evidence as adduced is included in the bill.

3. Criminal law ⊜⇒1111(5)—Where a bill of exceptions incorporates purported summary of evidence conflicting with judge's statement, the latter will be accepted.

Where a bill is reserved to the refusal of the judge to give a special charge, and there is incorporated in it what purports to be a summary of the evidence adduced, followed by a statement of the judge, the statement will be accepted, in so far as there is conflict, and the summary, in so far as its allegations are admitted or not denied in the statement.

4. Indictment and information ⊜⇒125(41)—Count charging included offenses not bad for duplicity.

Generally speaking, where distinct offenses denounced by different statutes are charged in one count, the charge is bad for duplicity, but exceptions to that rule are recognized where the charge of a minor is necessarily included in that of a major offense, or where, though the language is applicable to either of the statutory offenses, it clearly indicates the commission by the defendant of but one act.

O'Niell, J., dissenting in part.

Appeal from Fourth Judicial District Court, Parish of Union; J. B. Crow, Judge.

Jim Foster and Smith Canterbury were convicted of assault with a dangerous weapon and inflicting a wound less than mayhem, and from the conviction and sentence they appeal. Conviction and sentence set aside, and case remanded.

J. W. Elder, of Farmersville, for appellants.

A. V. Coco, Atty. Gen., and S. L. Digby, Dist. Atty., of Farmersville, for the State.

MONROE, C. J. Defendants prosecute this appeal from a conviction and sentence under an indictment which charges that they "did willfully, maliciously, feloniously, and unlawfully make an assault upon one Joe Cartledge with a dangerous weapon, to wit, a knife, and did then and there inflict a wound less than mayhem upon him, the said Joe Cartledge, contrary," etc.

[1] The indictment was, no doubt, drawn to charge the offense of inflicting a wound less than mayhem with a dangerous weapon, as denounced by section 794 of the Revised Statutes, but the pleader incorporated therein the words "make an assault upon," which are not in that section, but are to be found in section 793; the two sections reading as follows:

"Sec. 793. Whoever shall, with a dangerous weapon or with intent to kill, make an assault upon another person, * * * shall, on due conviction thereof, suffer fine or imprisonment, or both, at the discretion of the court.

"Sec. 794 [as amended and re-enacted by Act 17 of 1888]. Whoever shall willfully and maliciously, with a dangerous weapon, or with intent to kill, inflict a wound less than mayhem upon another person, shall, on conviction, be imprisoned not exceeding two years, with or without hard labor, and fined not exceeding one thousand dollars."

According to the weight of authority, where distinct offenses, denounced by different statutes, are charged in one count of an indictment, the charge is bad for duplicity; but exceptions to that rule are recognized where a minor offense so charged is necessarily included in the major offense, or where, though the language is applicable to either of the statutory offenses, it clearly indicates the commission of but one act by defendant. 22 Cyc. p. 385, 2; 3 Cyc. 1036, b, citing various authorities, including State v. Taylor, 35 La. Ann. 835, and State v. Mc-Tier, 45 La. Ann. 440, 12 South. 516, which cases are applicable in all respects to that here presented, but neither of them explains why a prosecuting officer, instead of following the language of the statute under which he draws an indictment, should unnecessarily confuse with it the language of another statute.

The record before us discloses three bills of exception.

[2] Bill No. 1 was reserved to the refusal of the trial judge to instruct the jury that, other than the verdict "Guilty as charged" or "Not guilty," they could find either of the following, to wit: "First, assault with a dangerous weapon; second, assault and battery; third, assault."

There is no statement of facts or résumé of the evidence incorporated in the bill, and the reasons assigned by the judge for refusing the requested charge are: (1) That the requested verdicts would not be responsive to the charge laid in the indictment; (2) that there was no evidence to warrant such charge.

The finding last mentioned, in the absence of any evidence or statement in regard to any evidence by defendants' counsel, is conclusive against the maintenance of the bill, since a judge is not required to give instructions to a jury which would be irrelevant to any facts established or evidence adduced. State v. Powell, 109 La. 733, 33 South. 748; State v. Pastor, 111 La. 717, 35 South. 839; State v. Matthews, 111 La. 966, 36 South. 48; State v. Anderson, 120 La. 335, 45 South. 267; State v. Kemp. 120 La. 378, 45 South. 283.

[3] Bill No. 2 was intended to supply the deficiency in bill No. 1 by setting forth the theory of the defense with what purports to be a summary by defendants' counsel of the evidence adduced on the trial, to which is added a statement by the judge in which he finds that the "summary" is not a full and fair statement of the evidence, and thereupon proceeds to point out what he conceives to be its errors and omissions, making part of his statement the reasons and findings assigned for the ruling to which bill No. 1 was reserved.

He concedes that defendants "set up a sort of plea of self-defense which [quoting the statement] in my opinion and in the opinion of the jury was fragile," and that "the two defendants swore that M. B. Cartledge [a brother of the prosecuting witness] came up on a horse about the time the fight began," but he says:

"The evidence showed that the two accused went to the home of the prosecuting witness, called him out of the house, and asked him if he had said a certain thing, whereupon he answered that he had, and that he had seen that thing; and thereupon the accused Canterbury told the accused Foster to 'go on him,' and Foster said, 'You are a demned liar,' and, with a swing of his knife, cut the prosecuting witness on the throat from just below the ear to a point near the corner of the chin, inflicting a serious wound of about 3½ inches in length, with an opening, according to the attending physician, as large as a man's finger. About that time the prosecuting witness' brother had run up and was trying to prevent any further injury, when the accused Canterbury pulled said brother away from the other parties."

On the other hand, according to the "summary" of their counsel, defendants testified that the prosecuting witness at first denied that he had said what he was asked about, but (according to Foster's testimony) when his brother, M. B. Cartledge, came up, he then said that he had, and thereupon he (Foster) cut Joe Cartledge, being fearful that he was going to be attacked by Joe Cartledge and M. B. Cartledge. And Canterbury testified that he and Foster went to the scene of the difficulty, called Joe Cartledge out of his house, and asked him what he had been saying about him (or them); that Cartledge at first denied that he had been saying anything, but, when his brother came running up and said that they were ready for them, Joe Cartledge and Foster began fighting, and M. B. Cartledge ran by him (the witness) towards Foster; that witness tried to grab him, and that he saw M. B. Cartledge take a pistol out of his pocket of his jumper and put it in his coat pocket. The judge, it may be added, also states that there was testimony to the effect that shortly before defendants appeared at Cartledge's house they had left certain other premises, stating it to be their intention to go over to Cartledge's and "fix or kill him"; that it was shown that they were the aggressors throughout and struck the first blow (with the knife), and that they had been fairly tried and justly convicted. But he does not deny that they testified as above stated; and, for the purposes of the present inquiry, it is immaterial what our learned brother may have thought or what we may think concerning the credibility of that testimony, the jurisdiction to determine all questions of fact bearing upon that of guilt or innocence in criminal cases, and, incidentally all questions of the credibility of testimony being vested in the juries, and not in the judges. Const. art. 179. It can hardly be denied that the tendency of the testimony given by defendants, however impotent the judge may have considered it in actual effect, was to rebut that of the prosecution, upon which defendants were convicted of a crime, involving malice and carrying possible imprisonment at hard labor for two years and a fine not exceeding $1,000, and thereby tending either to acquit them of the entire charge or to secure for them a conviction of an offense of which malice is not an ingredient and which carries a lighter penalty.

"It is the duty of the judge to give full instructions to the jury covering the entire law of the case as respects all the facts proved or claimed by counsel to be proved, provided such claim is supported by any evidence." State v. Tucker, 38 La. Ann. 536, 789; State v. Wright, 40 La. Ann. 593, 4 South. 486; State v. Thompson, 45 La. Ann. 969, 13 South. 392; State v. Harris, 51 La. Ann. 1111, 26 South. 64.

[4] If, as held by the trial judge, the verdicts, one or the other of which he was requested to instruct the jury that they might find, would not have been responsive to the charge preferred by the indictment, the refusal to give the requested charge would no doubt have been authorized; but there was error in holding that neither of the verdicts would have been so responsive, and that the charges of assault with a dangerous weapon, assault and battery, and assault, are not in-

149 LOUISIANA REPORTS

gredients of, and not included in, the charge of willfully and maliciously making an assault with a dangerous weapon and inflicting a wound less than mayhem.

In State v. Taylor, 35 La. Ann. 836, 837 (a prosecution under R. S. § 794, decided prior to the amendment of 1888), the indictment, as in this case, contained the words "did make an assault," and the court said:

"It is obvious that an assault is essentially an * * * ingredient of the offense charged. There can be no battery, no murder, no rape, no wounding, unless an assault be first committed."

In State v. Murdoch, 35 La. Ann. 729, it was held that, under an indictment for shooting with intent to murder, a verdict of "inflicting a wound less than mayhem" was fatally variant, Bermudez, C. J., and Manning, J., dissenting. The point of difference was not, however, as to the rule, but as to its application in the particular case; the majority of the court being of opinion that the charge of inflicting with a dangerous weapon a wound less than mayhem was not necessarily included in the charge of shooting with intent to commit murder. The raison d'être of the rule appears to be that, while in general different offenses may not be charged in one count, lest the defendant be confused in his defense, the situation is different where the evidence required to convict of an offense charged may be insufficient for that purpose, but sufficient to convict of a minor offense, of the same character, and necessarily included in the charge.

"Take, for instance," says the majority opinion in the above-cited case "the enumeration by Mr. Wharton of the cases in which verdict for a minor may be sustained under an indictment for major offense: 'Thus, if A. be charged with feloniously killing B. of malice prepense, and all but the fact of malice prepense be proved, A. may clearly be convicted of manslaughter, for the indictment contains all the allegations essential to that charge. * * * Another illustration is that of assaults upon officers, assaults with battery, or assaults with felonious intent, where, as has

been seen, all but the assault may be rejected as surplusage, and the defendant convicted of that alone.'" 1 Whar. Cr. L. § 627; 1 Archbold, pp. 309, 310.

As held in State v. Taylor, supra, there can be no battery or rape or wounding without a previous assault; and the charge of willfully and maliciously making an assault with a dangerous weapon and inflicting a wound less than mayhem necessarily includes the charges of assault with a dangerous weapon, assault and battery, and assault, and the evidence required to sustain the major charge, though insufficient to prove it, would be admissible and might be sufficient to establish one of the minor charges.

Again, quoting from the majority opinion (in this instance on the application for rehearing in the Murdoch Case):

"Where the major offense charged necessarily includes a minor offense, the indictment includes the latter and will support conviction therefor. But when the major offense does not necessarily include the minor, but might be fully proved without including proof of the minor, how can it be said that the indictment, in charging the major, has also charged the minor offense?"

See, also, State v. Ford, 30 La. Ann. 313; State v. Williams, 30 La. Ann. 1162.

Counsel for the prosecution refer to State v. Hagan, 45 La. Ann. 839, 12 South. 929, State v. Watson, 41 La. Ann. 598, 7 South. 125, and State v. Robinson, 104 La. 224, 28 South. 1002, as supporting the contention that assault with a dangerous weapon, assault and battery, and assault are not necessary ingredients of willful and malicious assault with a dangerous weapon, inflicting wound less than mayhem, because, as we understand the reference, the latter offense involves malicious intent.

The counsel has probably fallen into an error as to the cases intended to be cited, for we find nothing in those mentioned that seems to apply to the point to which they are addressed.

Counsel for defendants suggests that the evidence shows that the defendant Canterbury did not actually participate in the cutting of the prosecuting witness. We do not feel called on to express any opinion as to the facts, save as we have been compelled to. Canterbury was indicted and tried as a principal, and, if legally convicted, would be liable to punishment as such. State v. H. B. Ellis et. al., 12 La. Ann. 390–394.

Bill No. 3 has been abandoned.

Our conclusion is that defendants were entitled to have the jury instructed as requested, and that the refusal of their request was reversible error.

It is therefore ordered that the conviction and sentence appealed from be set aside, and the case remanded to be proceeded with according to law and the views hereinabove expressed.

O'NIELL, J., concurs in the decree, but is of the opinion, with regard to bill No. 1, that the judge was not warranted in his refusal to charge the jury upon the different verdicts which they might render, even though the judge did not think that the evidence would justify any particular verdict.