(91 South. 411)

No. 25083.

## STATE v. FOSTER.

(Feb. 27, 1922. Rehearing Denied March 27, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬳1149—Refusal of withdrawal of plea of not guilty to allow motion to quash indictment in trial judge's sound discretion.**

Leave to withdraw plea of not guilty to afford opportunity to file motion to quash the indictment rests in the discretion of the trial judge, and his refusal will not be interfered with, except for clear abuse of such discretion.

**2. Criminal law ⬳301—No abuse of discretion in refusing withdrawal of plea of not guilty to allow motion to quash indictment.**

There was no abuse of discretion in refusing to allow withdrawal of plea of not guilty to afford opportunity to file motion to quash the indictment because of irregularities preliminary to selection of the grand jury which found the indictment, defendant having waited more than a year, and till the day of trial, before moving to withdraw; his excuse of having several times called on the clerk of court for the papers before succeeding in seeing them being insufficient.

**3. Jury ⬳131(4)—Right of voir dire examination as to giving benefit of reasonable doubt stated.**

Defendant has no right to ask a juror on his voir dire whether he will give him the benefit of a reasonable doubt, at least in the absence of evidence tending to show bias on the part of the juror, and even then it should be asked only after the judge, or counsel, with the consent of the judge, has explained to the juror his duty in the premises, and what is meant by a reasonable doubt.

**4. Jury ⬳131(4)—Not proper to ask juror on voir dire whether he will give benefit of reasonable doubt in respect to law.**

Under no circumstances is it proper to ask a juror on his voir dire whether he will give defendant the benefit of a reasonable doubt in respect to the law; it being a juror's duty to accept the law, as given to him by the court, so he should not be impressed with the idea that he has a right to entertain a reasonable doubt concerning the law as thus given.

**5. Homicide ⬳339—Exclusion of evidence to show absence of malice aforethought harmless in view of verdict.**

Exclusion of evidence, admissible, if at all, only to show absence of malice aforethought, was cured by the verdict convicting of shooting, not with intent to murder, but with intent to kill.

**6. Homicide ⬳181—Witnesses ⬳269(4)—Evidence as to provocation held admissible, and cross-examination of defendant's wife as to truth of her statements to defendant was proper.**

In determining defendant's claimed belief in a statement, claimed to have been made to him by his wife, of an insult offered to her by the man whom defendant afterwards shot, the truthfulness of that statement was proper for the jury to consider; so that the question to the wife on her cross-examination whether the statement which she testified that she made to defendant was a correct statement of what had occurred was directly connected with the examination in chief.

**7. Witnesses ⬳330(2)—Question on cross-examination admissible to test credibility.**

The question on cross-examination of defendant's wife, who had testified to making a statement to defendant of an insult offered to her by the man whom defendant shot, relied on to show absence of malice aforethought, whether the statement she made to defendant was a correct statement of what had taken place, was admissible to test her credibility.

**8. Witnesses ⬳321—Where put on stand by defendant, may be impeached by state though subpœnaed by it.**

That the state had subpœnaed a witness did not debar it from impeaching him; defendant, and not it, having put him on the stand.

**9. Witnesses ⬳332—Discretionary to allow state, after defendant had closed, to recall witness to lay foundation for impeachment.**

It is in the court's discretion to allow the state, after defendant has closed his case, to

recall his witness for purpose of laying foundation to impeach him, especially where notice of intention to recall for such purpose had been given before defendant rested.

**10. Criminal law ⚖➔665(7), 1153(5)—Discretionary to allow one in court during trial, but not summoned, to testify, though witnesses had been sequestered, and discretion will not be interfered with.**

Though all the witnesses subpœnaed had been sequestered, the fact that a person not summoned and not known to be needed had been in the courtroom throughout the trial did not necessarily call for exclusion of him from the witness stand, when the state asked to have him called to impeach a witness for defendant, but whether he should be permitted to testify was in the sound discretion of the trial court, not to be interfered with in the absence of proof of fraud on the part of the prosecution.

**11. Witnesses ⚖➔398(2)—Where there is a mere attempt to contradict foundation to impeach, not required.**

Where the state is merely seeking to rebut testimony of defendant's witness by showing that an occurrence was different from what she had testified, there is no occasion for laying a foundation for impeachment.

**12. Homicide ⚖➔338(5)—Admission of evidence harmless in view of verdict.**

The sole object of state's testimony being to show that the shooting was with malice aforethought, its admission, if erroneous, was harmless; the verdict excluding such malice.

**13. Criminal law ⚖➔921—Error in ruling manifestly harmless disregarded.**

Any error in ruling of trial judge, in admitting or excluding evidence, when manifestly not prejudicial, is not ground for setting aside the verdict.

**14. Criminal law ⚖➔881(2)—Indictment and information ⚖➔191(4)—Verdict permissible under indictment for shooting with intent to murder stated.**

Under an indictment for shooting with intent to murder, the statute denouncing nothing else, there may be simply a verdict of guilty as charged, or guilty of shooting with intent to kill, or not guilty; a verdict of assault with a dangerous weapon, assault and battery, or simple assault would be unresponsive to the charge.

**15. Criminal law ⚖➔968(5, 11), 972—Motion in arrest directed to errors patent on the face of the record, and failure to allow withdrawal of plea or disqualification of jurors not ground for motion.**

Motion in arrest of judgment must be directed against errors patent on the face of the record, and so may not be based on refusal to permit withdrawal of plea of not guilty and filing of motion to quash, or on the ground of jurors having been disqualified.

**16. Criminal law ⚖➔923(1)—Prior diligence necessary for new trial for disqualification of juror.**

That disqualification of a juror may be ground for new trial, defendant must show that he did not know thereof when he accepted the juror, and could not then have ascertained by due diligence, and that such diligence was exercised by examination of the juror on his voir dire, and that he answered falsely.

**17. Jury ⚖➔47—Juror not disqualified by temporary absence from parish.**

A juror is not disqualified by temporary absence from the parish of his residence, especially when it is to be of short duration.

**18. Jury ⚖➔83(3)—Juror not disqualified by waiting as deputy sheriff on grand jury.**

One is not disqualified as a juror by waiting as a deputy sheriff on the grand jury which found the indictment; the proceedings of that body being secret.

St. Paul, J., dissenting in part.

Appeal from Thirtieth Judicial District Court, Parish of La Salle; F. E. Jones, Judge.

John R. Foster was convicted of shooting with intent to kill, and appeals. Affirmed.

A. D. Flowers, of Jena, and G. T. McSween, Jr., of Shreveport, for appellant.

A. V. Coco, Atty. Gen., and J. B. Thornhill, Dist. Atty., of Columbia (C. W. Flowers, of Jena, and T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

OVERTON, J. The grand jury, in and for the parish of La Salle, on November 13, 1920, returned a true bill against defendant, charging him with shooting one C. F. Wray with

the felonious intent to murder. Defendant was arrested on November 18, 1920, and was released on bail on the same day. The bond required that he should report in open court on the 22d of November to answer the charge. On that day he reported, was arraigned, pleaded not guilty, and his case was fixed for December 7, 1920, and later was refixed for February 8, 1921, but was not tried then. On June 15, 1921, his bond was forfeited because of his failure to appear for trial. On December 8, 1921, more than a year after his arraignment, and on the day of his trial, he moved the court for leave to withdraw his plea of not guilty, and to file a motion to quash the bill of indictment, because the procès verbal of the jury commission that selected the grand jurors, from which list the grand jury was drawn, that indicted him, was signed by only four of the jury commissioners; and because that instrument does not show that the commissioners were notified to appear and select a venire of grand jurors; and because it does not show that, in supplementing the general venire box, the names of the prospective jurors were written on separate slips and placed in that box; and because the procès verbal was not properly certified by the clerk. The court refused to grant permission to withdraw the plea of not guilty, so that the motion to quash might be filed, but permitted defendant to offer his evidence, in support of that motion, to form part of the bill of exception reserved.

[1, 2] While we are not impressed that the evidence thus offered shows that the indictment should be quashed, yet the matter properly comes before us on the refusal of the trial judge to permit the withdrawal of the plea of not guilty so as to afford defendant an opportunity to file the motion to quash. The withdrawal of the plea for such a purpose rests within the discretion of the trial judge, and the exercise of that discretion will not be interfered with save where it has been clearly abused. State v. Gregg, 123 La. 610, 49 South. 211; State v. Boudreaux, 137 La. 227, 68 South. 422; State v. Sandiford (No. 24545) 149 La. 933, 90 South. 261. There is no abuse of discretion in refusing to permit the withdrawal of the plea of not guilty where defendant has waited over a year, and until the day of trial, to move to withdraw it. The excuse offered by him for the delay, that he did not know of the alleged irregularities until after having called on the clerk of court several times for the original procès verbal, before he succeeded in seeing it, is not sufficient; since, if the clerk failed to show it to him timely, he had ample opportunity to take the necessary steps to require him to do so. The judge, therefore, was clearly within the law in refusing to permit the withdrawal of the plea.

[3, 4] While the jury was being impaneled, the defendant asked a juror, on his voir dire, the following question:

"Mr. Miles, in this case, there are a number of verdicts which may be rendered, some of which carry with them a penitentiary sentence. The nature of the offense would determine the verdict that you should render. The law makes you the sole judge of the law and the evidence, and in the event of any reasonable doubt on either the law or evidence it is your duty to give the accused the benefit of the doubt. Would you do that?"

This question was objected to by the state for the reason that it was improper, confusing, and not a correct exposition of the law. The objection was maintained.

The question was properly excluded. Its purpose was to ascertain whether the juror would give the accused the benefit of a reasonable doubt as to his guilt. The question is preceded by much information which is irrelevant to it, and which, when considered in connection with it, would likely have confused the juror, had it been permitted. Beyond the confusing tendency of the question, because of the irrelevant matter it contains, the question itself was not permissible. The

defendant has no right to ask a juror whether he will give him the benefit of a reasonable doubt, at least in the absence of evidence tending to show bias on the part of the juror, and even then, when it is desired to ask the question to test the existence of the supposed bias, the question should be asked only after the judge, or counsel, with the consent of the judge, has explained to the juror his duty in the premises, and what is meant by a reasonable doubt. The question is one of law, and a defendant, as a general rule, has no right to question a juror as to the law, or as to what he will do under the law. In State v. Perioux, 107 La. 601, 31 South. 1016, it was ruled that it was objectionable to ask a juror whether, if accepted on the jury, he would give the accused the benefit of any doubt created in his mind by the evidence and acquit him; the court saying:

"The law requires the trial judge, at the end of the trial, to charge the jury that if a reasonable doubt find lodgment in their minds as to the guilt of the accused, they must give the latter the benefit of the same and acquit, and it is not to be supposed, in advance, that the jury will decline to heed the charge so to be given, or that a juror will refuse to be instructed by the court."

In the absence of evidence tending to show bias on the part of a juror, there is no reason to believe that he will refuse to follow the instructions of the court in such a matter, and therefore the question is unnecessary, and serves no other purpose than to consume time. It is true that it is proper to ask a juror whether he will convict on circumstantial evidence, or whether he has conscientious scruples against inflicting the death penalty, but this is because of a known antipathy by many to do either, and therefore these questions are proper. Moreover, the question was not correctly put, because the juror was asked whether he would give the accused the benefit of a reasonable doubt in respect to either the law or the evidence, whereas the question should have been, had it been proper to ask it, whether the juror would give the accused the benefit of a reasonable doubt arising from the evidence, or from the lack of evidence. It is the duty of the juror to accept the law, as given him by the court, and of the court to charge it with clearness and certainty, and the juror should not be impressed with the idea that he has the right to entertain a reasonable doubt concerning the law as thus given.

[5] While the defendant was on the witness stand in his own behalf, his counsel asked him to repeat a conversation that took place between him and his wife on the morning that the prosecuting witness, Wray, was shot. The purpose of the question was to show that defendant received information for the first time, in that conversation, of an alleged insult offered by Wray to defendant's wife, in a dispute over the weight of some ice, purchased by her from Wray. The state objected to the question on the ground that the evidence sought to be elicited was hearsay, irrelevant, and immaterial. Counsel for the defendant then immediately declared that the purpose of the evidence was to show that the shooting was not done with malice aforethought, but in a sudden heat of passion, and hence that the shooting was not done with the felonious intent to murder. The trial judge maintained the objection, as he considered the evidence hearsay. He states, however, in the per curiam attached to the bill, that defendant's wife, while a witness in her husband's behalf, later testified fully as to the conversation, and without objection from the state.

Granting for the purposes of this decision that the court erred in excluding the conversation, when the husband was asked to state it, still the error proved harmless, for the only purpose for which the evidence was offered, and the only purpose for which it could have been admitted legally, if admissible at

all, that of showing the absence of malice aforethought, was accomplished without it, for it appears from the verdict that the jury found that the defendant shot Wray without malice, for it convicted him, not of shooting with intent to murder, but of shooting with intent to kill. Hence the error of the court, if there were error, was cured by the verdict. State v. Sandiford, cited supra.

[6, 7] When the wife of defendant was on the stand testifying in behalf of her husband, she was asked, on her examination in chief, the following question:

"Mrs. Foster, what, if anything, did you tell your husband on Monday morning immediately preceding the difficulty at the icehouse?"

In answer to this question the witness detailed the statement made to her husband on the morning of the shooting, which consisted of the entire conversation between her and Wray. The witness was then consigned for cross-examination, when she was asked the following question by the state:

"Mrs. Foster, is the statement you made to your husband on this Monday morning a correct statement of what took place at the icehouse on the day before, on Sunday morning?"

To this question the defendant urged the following objection:

"That it was not in rebuttal of anything brought out on direct examination, as the question propounded by counsel for defendant was limited strictly to the conversation that took place between defendant and his wife, and not as to the facts of what occurred at the icehouse on Sunday preceding the difficulty."

The court properly overruled the objection. The sole purpose of the question was to elicit whether the witness had made to her husband a truthful statement of what had taken place between herself and Wray. The defendant was relying on showing his belief in that statement to prove that the insult to his wife, then communicated to him, had thrown him into a sudden heat of passion, which caused him to shoot the man who had offered her the insult. The truthfulness of that statement was proper evidence for the jury to consider in determining defendant's belief in it, and therefore was directly connected with the examination in chief. Moreover, the question was admissible to test the credibility of the witness. Had she answered No, the answer would have affected her credibility, and probably would have cast a doubt upon whether she made the statement to her husband at all.

[8] Both the state and the defendant summoned Tom Sandiford as a witness, but the defendant alone had him sworn and called to the stand as such. Before the defense closed its case, the state announced that it desired to recall this witness for the purpose of laying a foundation to impeach him. The defense then finished offering its evidence and closed, and the court, after the defense had closed, permitted the state, over the objection of the defendant, to recall the witness for the purpose of laying the foundation to impeach.

[9] The fact that the state had subpœnaed the witness did not oblige it to put him on the stand, nor did it debar the state from impeaching him, when the defendant saw proper to use him as his witness, and have him sworn as such. It was within the discretion of the court to reopen the defendant's case to permit the laying of the foundation to impeach, and to permit the witness to be recalled for that purpose, especially as the state had given notice of its intention before the defendant rested. State v. Goodbier, 48 La. Ann. 770, 19 South. 755; State v. Brown, 111 La. 696, 35 South. 818.

[10] Immediately before the introduction of evidence, the court, at the request of the defendant, had all of the witnesses in the case sequestered, except the wife of the defendant and the prosecuting witness. While the state was offering evidence in rebuttal, it asked to have A. G. Warner called as a witness, for

the purpose of impeaching the witness Sandiford. Warner had not been subpœnaed as a witness, as it was not known that he would be needed. He had been sitting in the courtroom during a good part of the trial, and had heard Sandiford's evidence. These facts did not call necessarily for a ruling excluding him from the witness stand. As to whether the witness should have been permitted to testify was in the sound discretion of the trial judge, and such discretion will not be interfered with, in the absence of proof of fraud on the part of the prosecution. State v. Hogan, 117 La. 863, 42 South. 352.

[11, 12] The state, in rebuttal, placed Albert Boddie on the witness stand, and asked him to state what, if anything, Mrs. Foster had to say when she went to the icehouse. The defendant objected to this question on the ground that no evidence had been offered by him as to what had taken place at the icehouse between Mrs. Foster and Wray; that the only evidence of that nature that had been offered by the defense was Mrs. Foster's statement of what she had told her husband had occurred. The court overruled the objection, but limited the evidence to contradicting Mrs. Foster's statement to defendant as to what had occurred there, and added, in the per curiam attached to the bill, that the testimony of this witness, and that of another, Henry Ford, was clearly in rebuttal of the testimony of Mrs. Foster, as she had testified how Wray had treated her on that occasion.

The defendant not only complains of the admission of this evidence, in rebuttal, for the above reasons, but also because no foundation had been laid to impeach Mrs. Foster.

In answer to the last objection, it may be said that the state was not seeking to impeach Mrs. Foster by showing that she had made statements conflicting with her evidence on the stand, but it was seeking to rebut her evidence as to what she testified had occurred at the icehouse by showing what it considered had really occurred there. Therefore there was no occasion to lay a foundation, as is required to be laid when an attempt is made to impeach a witness, when it is asserted that the witness has made statements conflicting with his or her evidence on the stand. Without laying such foundation, the state may proceed to show its version of what occurred.

As to whether or not the evidence offered in rebuttal was admissible as such, it is unnecessary to determine. Its sole legal effect was to show that the shooting was done with malice aforethought, and not in a sudden heat of passion caused by an adequate provocation. Its only purpose was to show that the insult was not offered defendant's wife. It is manifest that it failed of that purpose, for the jury found the defendant guilty of shooting with intent to kill, and not with intent to murder. Therefore, assuming that the ruling was erroneous, defendant was not injured by it.

[13] The verdict of a jury will not be set aside, even though there should be error in a ruling of the trial judge, when it is manifest that the error, if any, was not prejudicial to the defendant. State v. Wiggins, 45 La. Ann. 416, 12 South. 630.

For the same reasons, assuming that there was error in the next bill reserved, which shows the refusal of the trial judge to permit the defendant to put witnesses on the stand, in surrebuttal, to rebut the above evidence, still defendant was not injured, as is obvious from the verdict rendered.

[14] At the conclusion of the argument, the defendant requested the judge to incorporate in his general charge the following instruction:

"The charge of shooting with intent to murder includes the minor offenses of shooting with intent to kill, assault with a dangerous weapon, assault and battery, and simple assault."

We assume that the defendant expected this instruction to lead to a further instruction from the court that the jury might return a verdict on any one of the minor charges mentioned. The court below so regarded the request, and the defendant in his brief so treats it. The special instruction was refused, and the court, instead, charged the jury that it might return a verdict of guilty as charged, or guilty of shooting with intent to kill, or not guilty, as the law and the evidence might warrant.

The court properly refused to give the special charge. The charge given by the court was correct. A verdict of guilty of assault with a dangerous weapon, or one of guilty of assault and battery, or one of guilty of an assault, would not have been responsive to the charge of shooting with intent to murder. State v. Benjamin (La.) 14 South. 71, not officially reported; State v. Robertson, 48 La. Ann. 1067, 20 South. 296; State v. Bellard, 50 La. Ann. 596, 23 South. 504, 69 Am. St. Rep. 461; State v. Washington, 107 La. 302, 31 South. 638. The case of State v. Foster, 149 La. 521, 89 South. 680, relied upon by defendant, has no application to this case. There, the indictment was framed under section 793 of the Revised Statutes, and under Act 17 of 1888, and charged the defendant with having made an assault upon another with a dangerous weapon, and with having, then and there, inflicted a wound upon him less than mayhem. The court simply held that it was proper to charge the offense of assault with a dangerous weapon denounced by section 793 of the Revised Statutes, and wounding one, with a dangerous weapon, less than mayhem, denounced by Act 17 of 1888, in the same count; and as these statutes denounce an assault and an assault with a dangerous weapon, and as these offenses are included necessarily in the greater one of inflicting with a dangerous weapon, a wound less than mayhem, and

as the wounding implies the commission of a battery, which is also included in the greater offense, and as the indictment charged all of these elements, therefore, in addition to the verdicts of guilty as charged and not guilty, verdicts of guilty of an assault, guilty of an assault with a dangerous weapon, and guilty of assault and battery would be responsive to the charge. Whereas, in the case at bar, while the charge of shooting with intent to murder includes an assault and an assault with a dangerous weapon, yet the statute does not expressly denounce an assault, and consequently the indictment does not expressly charge one; and hence, it would be going too far, as pointed out in the case of the State v. Washington and in that of the State v. Robertson, cited supra, to sanction such verdicts. If the statute read, "Whoever shall assault another with a dangerous weapon and shoot him with intent to murder," thus expressly denouncing the assault, .and the indictment so charged, we doubtless would feel justified in taking a different view, but not otherwise.

[15] Defendant filed a motion in arrest of judgment based upon the ground that the court erred in refusing to permit him to withdraw his plea of not guilty and to file the motion to quash heretofore mentioned, and upon the further ground that two of the petit jurors, who sat in his case, were disqualified. The motion was properly overruled. A motion in arrest of judgment must be directed against errors patent on the face of the record, and those here alleged, if they exist, are not such errors.

[16] Defendant also filed a motion for a new trial based upon the ground that the court below erred in each of its rulings set forth in the 10 bills of exception that we have already considered, and upon the further ground that the juror, Lloyd Whatley, who was a member of the jury that convicted him, was not a resident of the parish, and that B.

V. Bradford, who also was a member of that jury, was disqualified as a juror in the case, because as a deputy sheriff, he had waited on the grand jury that indicted him. He alleges that he had no knowledge of the incompetency of these jurors until after his conviction.

Granting, for the moment, that the juror Whatley was disqualified because of residence, still it does not appear that the defendant questioned him concerning his residence, when he was consigned to him for examination on his voir dire, or that defendant made any other effort to ascertain that fact before accepting him. To take advantage of such a point, after verdict, it must be made to appear that the disqualification of the juror was not known to defendant, when the juror was accepted by him, and could not then have been ascertained by due diligence; and it must be made to appear that such diligence was exercised by an examination of the juror, on his voir dire, touching his qualifications, and that he answered falsely. State v. Harper, 51 La. Ann. 163, 24 South. 796; State v. Button, 50 La. Ann. 1072, 23 South. 868, 69 Am. St. Rep. 470; State v. Bower, 26 La. Ann. 383; State v. Sopher, 35 La. Ann. 975; State v. Nash, 45 La. Ann. 974, 13 South. 265.

[17] However, the juror Whatley was competent. He was only temporarily absent from the parish. Temporary absence, especially when it is to be of short duration, as was the case in this instance, does not disqualify a juror. State v. Wimby, 119 La. 139, 43 South. 984, 12 L. R. A. (N. S.) 98, 121 Am. St. Rep. 507, 12 Ann. Cas. 643; State v. Tomsa, 126 La. 682, 52 South. 988.

[18] The juror Bradford was also competent. The fact that he had waited as a deputy sheriff, on the grand jury that returned the indictment, did not disqualify him. The proceedings of that body are secret, and the fact that he had waited on them in the capacity mentioned does not show that he knew what had transpired in the grand jury room. He swore on his voir dire, as a juror, that he knew nothing of the facts of the case, and consequently that he had formed no opinion.

For the reasons assigned, it is ordered that the verdict and the sentence appealed from be, and the same are hereby, affirmed.

O'NIELL, J., concurs in the result.

ST. PAUL, J., concurs in decree and assigns reasons.

ST. PAUL, J. I concur in the decree, and also in the opinion, except in so far as it approves of the ruling of the trial judge permitting the defendant's wife to be questioned as to what actually occurred at the icehouse, since that matter was wholly irrelevant, and the sole purpose of the state was evidently to impeach the witness by subsequently contradicting her, as it attempted to do by the testimony of Brodie.

*A witness cannot be asked irrelevant questions for the purpose of afterwards impeaching him.*

But I agree that this ruling did not injure the defendant, since the jury evidently believed her version of *what she told her husband*, as shown by the verdict which they found.